NATHANIEL R. JONES, Circuit Judge.
Plaintiffs-appellants Brunswick Associates Ltd. (“Brunswick”), Clinton Associates Limited Partnership (“Clinton”), Ft. Oglethorpe Associates Limited Partnership (“Ft. Oglethorpe”), and West Knoxville Associates Limited Partnership (“W. Knoxville”), appeal the district court’s order affirming the Bankruptcy Court’s decision denying their motion for leave to file their proofs of claim out of time. For the reasons that follow, we reverse.
I.
The facts giving rise to this appeal are uncontested. On April 12, 1989, the debt- or-appellee Pioneer Investment Services Company (“Pioneer”) filed its voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. At the same time, Pioneer filed a list of its twenty largest unsecured creditors. This list included Brunswick, Clinton and W. Knoxville. Pioneer asked for and was granted extensions by the bankruptcy court through May 17, 1989, within which to file its statement of affairs and the relevant schedules.
On April 13,1989, a Notice for a Meeting of Creditors was mailed by the bankruptcy court clerk’s office to the parties in interest setting May 5, 1989 as the date for the creditor’s meeting required under Section *675 341(a) of the Bankruptcy Code. This notice also fixed August 3, 1989, as the bar date for filing proofs of claim by unsecured creditors. This notice specifically provided as regards the bar date:
You must file a proof of claim if your claim is scheduled as disputed, contingent or unliquidated, is unlisted or you do not agree with the amount. See 11 U.S.C. § 1111 & Bankruptcy rule 3003. Bar date is August 3, 1989.
J.App. at 175 (quoting notice). The bankruptcy court found that Mark A. Berlin, president of Robriste Enterprises, Inc., general partner of Clinton, W. Knoxville, and Brunswick, and president of Pudding Enterprises, Inc., general partner of Ft. Oglethorpe, received and read the April 13, 1989 notice. The court also found that Berlin is an experienced businessman engaged in real estate and financial management, an attorney licensed to practice in Florida and New York and a certified public accountant.
The bankruptcy court found that Berlin attended and participated in the May 5, 1989 meeting of creditors. The records to the creditor’s meeting held on May 19 also indicate that Berlin entered an appearance on behalf of the partnerships.
Prior to the May 19 meeting, Pioneer filed its statement of financial affairs and the relevant schedules. The plaintiffs are not listed on the schedules as originally filed. However, on May 25, Pioneer amended its schedules to include Clinton, W. Knoxville and Brunswick as creditors holding contingent unliquidated, and disputed claims. Ft. Oglethorpe is not listed on the schedules as a creditor.
On June 5, the United States Trustee filed his “Appointment of Committee of Unsecured Creditors” designating Clinton as a member of the creditors’ committee. Berlin, representing Clinton, was a member of this committee from its inception.
The plaintiffs collectively retained Marc Richards as their legal counsel. The bankruptcy court found that Richards was retained in mid-June and was an experienced bankruptcy attorney. Berlin's affidavit also suggests that Richards was provided with a complete copy of the bankruptcy file for all the partnerships and that the file contained the above-mentioned notice for filing proofs of claim. The testimony also indicates that Richards advised Berlin that there was no bar date in the file and that therefore, filing proofs of claim was not a matter of urgency.
On August 23, 1989, twenty days after the expiration of the bar date, the plaintiffs filed their proofs of claim. The claims were signed on behalf of Clinton, W. Knoxville, and Brunswick by “Mark A. Berlin, President of Robriste Enterprises, Inc. (General Partner).” The claim filed on behalf of Ft. Oglethorpe is signed “Mark A. Berlin, President Pudding Enterprises, Incorporated (General Partner).” The plaintiffs acknowledge that they filed the proofs of claim after the bar date and that they did not file any petition for an extension of time to file such proofs of claim. However, they claimed below, and claim before this court, that the bar date for filing should have been extended as their failure to timely file was due to “excusable neglect”, or, in the alternative, that their claims should be allowed nunc pro tunc to the bar date.
The bankruptcy court denied the plaintiffs’ motion to file their claims late, finding no “excusable neglect” within the meaning of the bankruptcy rules and no reason to exercise its equity power to allow the filing of the claims nunc pro tunc. 106 B.R. 510. The plaintiffs then appealed to the district court. While the district court accepted all of the bankruptcy court’s factual findings, the court found that the bankruptcy court had applied an overly strict interpretation of “excusable neglect” and the court remanded for reconsideration under a more liberal standard. On remand the bankruptcy court again found that, even under the more liberal interpretation of “excusable neglect” there was no basis for allowing the plaintiffs to file their claims out of time. The plaintiffs again appealed and the district court affirmed. This timely appeal followed.
II.
We review the factual findings of the bankruptcy court under a clearly erro *676 neous standard. Bankr.R. 8013. Whether the court properly found that a proof of claim was filed late due to “excusable neglect” is reviewed for abuse of discretion. In re Yoder Co., 758 F.2d 1114, 1117 (6th Cir.1985).
Section 1111(a) of the Bankruptcy Code requires creditors to file a proof of claim in circumstances where a particular claim is “scheduled as disputed, contingent, or un-liquidated.” 11 U.S.C. § 1111(a). In this case the plaintiffs acknowledge that they were required to file a proof of claim. Bankruptcy Rule 3003(c) requires the court to set a time within which proofs of claim may be filed and authorizes the court to extend such time limit “for cause shown.” Bankr.R. 3003(c)(3). It appears to be well-established that Bankruptcy Rule 3003 must be read in conjunction with Rule 9006(b), which guides courts as to how and when extensions of time may be granted. See, e.g., In re Vertientes, Ltd., 845 F.2d 57, 60 (3d Cir.1988); In re South Atlantic Fin. Corp., 767 F.2d 814, 817 (11th Cir.1985), cert. denied, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986); In re Dix, 95 B.R. 134, 137 (Bankr. 9th Cir.1988). Rule 9006(b) provides:
(b) Enlargement
(1) In General. Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.
Bankr.R. 9006(b)(1). In this case, no request for extension of time was made prior to the expiration of the bar date, therefore, the court only has discretion to extend the time for “excusable neglect.” See, In re Vertientes, 845 F.2d at 59 (court only has discretion to grant extensions as permitted in the two circumstances outlined in Rule 9006(b)(1)).
This court has never defined “excusable neglect” as it relates to the filing of late proofs of claim. Though the question was raised in In re Yoder, the court decided the case on other grounds and declined to adopt either a strict or a liberal interpretation of the term. 758 F.2d at 1118 and n. 4. The bankruptcy court in the instant action originally adopted the strict interpretation of “excusable neglect” following the Eleventh Circuit. Under this view, “excusable neglect” could only be found when the failure to timely perform was due to circumstances beyond the reasonable control of the party. In re South Atlantic Fin. Corp., 767 F.2d at 817. Other courts have also indicated a tendency to read the procedural requirements of the Bankruptcy Rules and notices strictly in order to further the purpose of quick and effective settlement of bankrupt estates. See, e.g., In re Robintech, Inc., 863 F.2d 393, 397-98 (5th Cir.1989), cert. denied sub nom., Bullock v. Oppenheim, Appel, Dixon & Co., — U.S. -, 110 S.Ct. 55, 107 L.Ed.2d 24 (1989); Maressa v. A.H. Robins Co., 839 F.2d 220, 221 (4th Cir.1988); In re Vertientes, 845 F.2d at 60-61. Reasoning from these and other similar precedents, the bankruptcy court determined that the proper interpretation of the “excusable neglect” rule was a strict one.
On its initial review, the district court reversed, arguing that Sixth Circuit precedent interpreting rules analogous to Bankruptcy Rule 9006(b) indicated a more liberal approach to the concept of excusable neglect. For example, in INVST Financial Group Inc. v. Chem Nuclear Systems, Inc., 815 F.2d 391, 397-400 (6th Cir.), cert. denied sub nom., Garrett v. INVST Financial Group Inc., 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987), this court interpreted Fed.R.Civ.P. 60(b), which governs motions to set aside default judgments as a result of “excusable neglect.” In that case, the court indicated that trial courts must examine a number of factors including prejudice to the plaintiff, the merits of the defendant’s defenses and any *677 culpable conduct on the part of the defendant in determining whether a Rule 60(b) motion satisfies the “good cause” or “excusable neglect” standards. Id. In addition, in In re Winner Corporation, 632 F.2d 658, 660-61 (6th Cir.1980), this court reversed a district court’s dismissal of a bankruptcy appeal, holding that the late filing of a designation of the record on appeal under former Bankruptcy Rule 806 would not justify dismissal of the appeal in the absence of a finding of negligence or indifference on the part of the appellant.
Reasoning from these precedents, the district court concluded that this court would likely adopt an approach similar to the approach taken by the Ninth Circuit in In re Dix, 95 B.R. 134 (Bankr. 9th Cir.1988) with respect to the proper interpretation of “excusable neglect.” In Dix, the court articulated five factors to be considered in order to determine whether a creditor has satisfied Bankruptcy Rule 9006(b)’s requirement of excusable neglect:
(1) whether granting the delay will prejudice the debtor;
(2) the length of the delay and its impact on efficient court administration;
(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;
(4) whether the creditor acted in good faith; and
(5) whether clients should be penalized for their counsel’s mistake or neglect.
95 B.R. at 138. The district court also suggested that on remand the bankruptcy court should consider whether the filing of the late proofs of claim resulted from negligence, indifference or culpable conduct on the part of the moving creditors or their counsel following the standards laid out by the court in INVST Financial Group, 815 F.2d at 398-99.
The parties understandably are split over which approach this court should adopt with respect to the application of Rule 9006(b). We find that the district court correctly interpreted this court’s precedent to suggest a more textured approach to the “excusable neglect standard.” In this regard, we find the Dix factors to be helpful in determining when a party has failed to timely file its proof of claims based upon excusable neglect. However, we believe that the Dix factors should be applied as aids for case-by-case adjudication, rather than a necessary or complete list of the factors to be considered.
That said, we turn to the analysis of the bankruptcy court’s decision below. Essentially, the appellants’ position is that the bankruptcy court on remand did not properly apply the Dix factors as directed by the district court. Specifically, the appellants claim that, in the guise of applying the Dix factors, the court simply reasserted the strict requirement that parties may only be excused for failure to timely file if that failure was beyond the reasonable control of the party whose duty it was to file. However, we find the plaintiffs’ characterization of the bankruptcy court’s opinion to be inaccurate. The bankruptcy court considered each of the Dix factors individually on remand, and essentially based its decision on the fact that Berlin, an experienced businessman and lawyer, and Richards, an experienced bankruptcy attorney, had actual notice of the bar date and simply failed to meet it. The court further found that Richards was negligent in failing to file the proofs of claim by the bar date and that his actions indicated an indifference to the bar date and the orders of the court.
While we find that the bankruptcy court did apply the Dix factors as directed by the district court on remand, it inappropriately penalized the plaintiffs for the errors of their counsel. As noted by the bankruptcy court, the ultimate responsibility of filing the plaintiffs’ proof of claims rested with the plaintiffs’ counsel Richards. There was evidence in the record to suggest that Mr. Berlin specifically inquired with Richards about the deadline for filing the proof of claims and that Richards had told him that there was no urgency. There was no finding by the bankruptcy court that the plaintiff partnerships were guilty of negligence, bad faith or culpable conduct. In light of the fact that Richards affirmatively told Berlin that there was no urgency with regard to the filing deadline, we find that *678 the partnerships in all likelihood relied on the expertise of their experienced bankruptcy counsel and paid no further heed to the matter.
We also find it significant that the notice containing the bar date was incorporated in a document entitled “Notice for Meeting of Creditors.” Such a designation would not have put those without extensive experience in bankruptcy on notice that the date appended to the end of this notice was intended to be the final date for filing proof of claims. Official Bankruptcy Form 16 provides a model for notifying creditors of a proof of claims deadline in a Chapter 11 bankruptcy.
The debtor [or trustee] has filed or will file a list of creditors and equity security holders pursuant to Rule 1007. Any creditor holding a listed claim which is not listed as disputed, contingent or un-liquidated as to amount, may, but need not, file a proof of claim in this case. Creditors whose claims are not listed or whose claims are listed as disputed, contingent, or unliquidated as to amount and who desire to participate in the case or share in any distribution must file their proofs of claim on or before [Insert Date], which date is hereby fixed as the last day for filing a proof of claim[.]
(emphasis added). While we do not suggest that the court was obligated to notify creditors in precisely this form, the comparison between this Form 16 notice and the notice actually given in this case suggests the dramatic ambiguity of the latter. This ambiguity is exacerbated by the fact that the notice was simply and inconspicuously labeled “Bar date” without any reference to its significance as a deadline for the filing of proof of claims. Even persons experienced in bankruptcy might confuse such a label for other deadlines. For example, the term “bar date” is also used to describe the deadline for filing objections to a debtor’s discharge under Rule 4007(c).
The uncontroverted evidence below established that while Berlin was an experienced businessman, he had no experience or expertise in bankruptcy. Thus, even if he could be attributed with having seen the “Notice for Meeting of Creditors” he should not necessarily have been attributed with understanding the significance of the date contained therein. This factor, when taken with Richards’ representations regarding the filing deadline, and the peculiar and inconspicuous placement of the bar date in a notice regarding a creditor’s meeting convince us that the bankruptcy court unjustifiably punished the plaintiffs for the sins and neglect of their lawyer.
Turning back to the Dix factors, the bankruptcy court specifically found that there would be no prejudice to the debtor as a result of the delay in plaintiffs’ filing, that the delay would not be disruptive of efficient court administration, and that there was no bad faith or culpable conduct on the part of the plaintiff partnerships. As described above, we find that the court erred in attributing the negligence of plaintiffs’ attorney to the partnerships. Further, since Richards’ negligence was responsible for the twenty-day delay in filing, and since the plaintiffs, through Berlin, specifically asked counsel regarding the filing deadline and were assured there was no problem, we do not find the fact that timely filing was not beyond the control of the plaintiffs to be determinative.
In sum, then, four of the five Dix factors weigh unequivocally in favor of the plaintiffs. Further, this court in the context of default judgments has held that absent prejudice to the plaintiff or culpable conduct on the part of the defendant, the policy of hearing claims on the merits weighs in favor of allowing the claims to go forward. See INVST Financial Group, 815 F.2d at 398-99. As the court put it, “Default judgments should not be used to discipline attorneys; it is the client who suffers by being deprived of his day in court.” Id. at 400. We find the same considerations should guide us when analyzing the impact of a failure to meet a filing deadline for proof of claims if the fault is clearly attributable to the attorney, and no prejudice results to the debtor.
III.
For the aforementioned reasons, the decision of the district court affirming the *679 bankruptcy court’s decision refusing to accept the plaintiffs’ late proof of claims is REVERSED and REMANDED for further proceedings consistent with this opinion.