**In the Matter of MOTHER HUBBARD, INC., Debtor.**

**Bankruptcy No. GG91–80981.**

United States Bankruptcy Court, W.D. Michigan.

March 5, 1993.

Thomas Schouten, Wyoming, MI, for debtor.

Timothy Hillegonds, Grand Rapids, MI, for Max Van Zoeren.

Harold Nelson, Grand Rapids, MI, for S. Abraham & Sons.

William Farran, Traverse City, MI, for the Unsecured Creditors' Committee.

## OPINION REGARDING MOTIONS TO ALLOW CLAIM AND TO FILE COMPETING PLAN

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUES

These contested matters present two issues. First, should the sole shareholder of a chapter 11 debtor be allowed to file an untimely unsecured claim? Second, should an unsecured creditor be allowed to file a competing chapter 11 plan of reorganization? Additionally, a third issue has been identified by the court. Should the court *sua sponte* schedule a hearing for the possible appointment of a chapter 11 trustee?

### II. JURISDICTION

This court has jurisdiction over the contested matters pursuant to 28 U.S.C. § 1334. This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O). The court has the authority to enter a final order. 28 U.S.C. § 157(c)(2). The following constitutes the court's findings of fact and conclusions of law. FED. R.BANKR.P. 7052.

### III. PROCEDURAL BACKGROUND AND FACTS

Mother Hubbard, Inc. (herein "Debtor") filed a voluntary petition under chapter 11 of the Bankruptcy Code on February 20, 1991. Max Van Zoeren (herein "Van Zoeren") is the president and sole shareholder of the Debtor. Prior to the bankruptcy filing, Van Zoeren made numerous unsecured loans to the Debtor totalling $61,671.04. (Plaintiff's Ex. 1.) Upon filing, the Debtor did not list Van Zoeren as one

of the twenty largest unsecured creditors.[1] After filing, Van Zoeren was not listed on the schedules as holding an unsecured claim.[2] Van Zoeren signed the schedules and statement of affairs, certifying their correctness under penalty of perjury, as president of the Debtor.

The chapter 11 schedules listed S. Abraham & Sons (herein "Abraham") as the largest unsecured creditor holding a claim of $194,610.00. Abraham subsequently filed an unsecured claim in the amount of $195,521.85. No objection to Abraham's claim has yet been filed.

A motion by the Debtor to establish a bar date for claims was filed on June 16, 1991. Van Zoeren knew of the motion and authorized the Debtor's counsel to file it. An Order Establishing Bar Date For Claims was signed by Judge Nims and docketed on June 24, 1991. That order established the claims bar date as July 15, 1991. Van Zoeren testified he knew of the bar date at least thirty days prior to its expiration.

Van Zoeren did not file a proof of claim before the claims bar date. Van Zoeren stated he intended to waive his unsecured claim as a so-called "new value" contribution under the Debtor's proposed reorganization plan.[3] On March 26, 1992, more than eight months after the bar date, Van Zoeren finally filed a late proof of claim in the amount $61,670.00.

A Disclosure Statement and Plan of Reorganization were filed by the Debtor on September 10, 1991. Subsequently, a First Amended Disclosure Statement and First Amended Plan of Reorganization were filed on February 21, 1992. An order approving the First Amended Disclosure Statement and scheduling the confirmation hearing for April 17, 1992 was docketed on February 28, 1992.

The First Amended Plan of Reorganization was not confirmed because 58% in amount of the large unsecured creditors' class voted to reject the plan.[4] Judge Nims did not deny confirmation of the first amended plan; instead a cram down hearing was scheduled but never held.[5] The Debtor filed its Second Amended Plan of Reorganization on February 5, 1993, thereby impliedly abandoning its cram down efforts.

Because no order was entered denying confirmation of the Debtor's First Amended Plan of Reorganization, Abraham filed a Motion for Authorization to File a Competing Plan on January 25, 1993.[6] Van Zoeren filed a motion to allow his untimely filed unsecured claim on January 27, 1993.

## IV. DISCUSSION

### A. *Should Van Zoeren's Proof of Claim Be Deemed Timely Filed?*

Van Zoeren asserts two arguments regarding the validity of his late filed proof of claim. First, he argues an informal proof of claim has been filed on his behalf. Therefore, the untimely filed proof of claim should be considered an amendment to the

---

**1.** Apparently, he was listed on the original unfiled draft but was deleted because he was an insider. (Plaintiff's Ex. 4.) Van Zoeren's $61,671.04 claim would have made him the third largest unsecured creditor of the Debtor.

**2.** Van Zoeren was listed on the mailing matrix because of his equity interest in the Debtor. Therefore, he received proper notice of numerous hearings in this case.

**3.** The Sixth Circuit recognizes the new value exception to the absolute priority rule. *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.),* 800 F.2d 581, 588 (6th Cir.1986). The court is somewhat curious as to why Van Zoeren had this intent. First, in order to waive a claim he must either have filed a claim (he had not) or

have been scheduled as holding an undisputed, noncontingent liquidated claim. 11 U.S.C. § 1111(a). Second, waiver of a proof of claim is not "money or money's worth" within the meaning of new value. *In re Creekside Landing, Ltd.,* 140 B.R. 713, 717 (Bankr.M.D.Tenn.1992).

**4.** Abraham was one of the unsecured creditors who voted to reject the First Amended Plan of Reorganization.

**5.** Judge Nims ceased performing his duties as a retired judge on September 30, 1992. The case was then reassigned to this judge.

**6.** An order was docketed on March 24, 1992 denying the extension of Debtor's exclusivity periods. The court had previously granted two extensions of the exclusivity periods.

timely filed informal claim. Second, even if Van Zoeren did not file an informal proof of claim, the court should allow his late claim under the excusable neglect theory.

### 1. Did Van Zoeren file an informal proof of claim?

■■■ A proof of claim must "conform substantially to the appropriate Official Form" and be filed before the claims bar date. FED.R.BANKR.P. 3001(a), 3002, 3003. Courts will deem a filed pleading, letter, or other document as an "informal proof of claim" if it substantially meets the requirements of an official proof of claim. The purpose of allowing an informal proof of claim is to avoid the "harsh results of strict enforcement of a bar date." 8 L. KING, COLLIER ON BANKRUPTCY ¶ 3001.03[3], at 3001–13 (15th ed. 1992).

■■■ However, not every document or paper filed with a bankruptcy court will constitute an informal proof of claim. *In re Charter Co.*, 876 F.2d 861, 863 (11th Cir.1989). The "document must apprise the court of the existence, nature and amount of the claim (if ascertainable) and make clear the claimant's intention to hold the debtor liable for the claim." *Id.* The debtor's knowledge of the creditor's claim is not enough to create an informal proof of claim. *Id.* at 864.

The court in *In re McCoy Management Servs.*, 44 B.R. 215 (Bankr.W.D.Ky.1984) set forth five elements which necessarily must be shown to find the existence of an informal proof of claim. Such a claim must: (1) be in writing; (2) contain a demand by the creditor on the estate; (3) express an intent to hold the debtor liable for the debt; (4) be filed with the bankruptcy court; and (5) be equitable under the facts of the case. *Id.* at 217. Other courts have required only an assertion of liability and an intent to hold the debtor liable. *See, e.g., In re Modular Eng'g Corp.*, 41 B.R. 52 (Bankr.S.D.Tex.1984); *In re Sullivan*, 36 B.R. 771 (Bankr.E.D.N.Y.1984).

In *In re Butterworth*, 50 B.R. 320, 322 (W.D.Mich.1984), Judge Enslen stated a document is an informal proof of claim if it evidences a demand against the estate and the creditor's intent to pursue the claim.

In *Butterworth*, the court held an informal proof of claim existed where the creditor submitted to the trustee a cover letter stating the creditor's intention to file a proof of claim and legal documents evidencing the debt. The court focused on the cover letter expressing an intent to pursue the debt. Under these facts, filing the cover letter (establishing intent) and legal documents (evidencing the debt) was sufficient to establish an informal claim. *Id.* at 323. Delivery to the trustee was tantamount to filing with the court. *See* FED.R.BANKR.P. 5005(c).

In *In re Dietz*, 136 B.R. 459 (Bankr. E.D.Mich.1992), Judge Spector combined the elements for an informal proof of claim into one concise sentence: "A written document filed with the bankruptcy court which contains a demand on the estate or otherwise expresses an intent to hold the debtor liable for an alleged debt will serve as an informal proof of claim." *Id.* at 464. The court reasoned both the demand requirement and the intent requirement need not co-exist because the existence of one necessarily implied the existence of the other. *Id.* The court also reasoned the equitable requirement was not important in deciding whether an informal proof of claim existed. The equity factor is more appropriately considered in deciding whether an amendment to an informal proof of claim should be allowed. *Id.* at 463–64.

■ In this matter, Van Zoeren fails to prove the elements necessary to establish an informal claim. The court agrees the promissory notes, ledger, and balance sheets establish a debt was owed to Van Zoeren by the Debtor. (Plaintiff's Ex. 1, 2 & 3.) Van Zoeren asserts other documents, i.e., the balance sheets, a prepetition draft of the twenty largest unsecured creditors of the Debtor which includes Van Zoeren's name without an amount of claim, the Debtor's preliminary business plan dated January, 1991, and a summary debt classification of the Debtor dated May 5, 1991, are sufficient to constitute an informal claim. (Plaintiff's Ex. 3–6.) However, none of these documents, alone or in tandem, can be considered as a demand for

payment. These documents do nothing more than show a *debtor* preparing to file for bankruptcy and considering eventual formulation of a reorganization plan. These documents show no intent *by Van Zoeren individually* to hold the estate liable for his unsecured claim. Further, none of these exhibits were filed with the court at any time prior to the hearing.[7] No document supports a conclusion that Van Zoeren was attempting to pursue the debt.[8] Additionally, Van Zoeren admitted no written demand was made because he did not then intend to pursue the debt owed to him, i.e., he intended to waive any debt in the Debtor's reorganization efforts.

### 2. Should Van Zoeren's late claim be allowed under the excusable neglect theory?

■ The Sixth Circuit stated the factors for interpreting "excusable neglect" under FED.R.BANKR.P. 9006(b) if a late proof of claim is filed. *Brunswick Assocs. Ltd. Partnership v. Pioneer Inv. Servs. Co. (In re Pioneer Inv. Servs. Co.)*, 943 F.2d 673, 677 (6th Cir.1991), *cert. granted,* — U.S. —, 112 S.Ct. 2963, 119 L.Ed.2d 585 (1992). Five factors ordinarily considered are:

(1) whether granting the delay will prejudice the debtor;

(2) the length of the delay and its impact on efficient court administration;

(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4) whether the creditor acted in good faith; and

(5) whether clients should be penalized for their counsel's mistake or neglect.

*Id.* These factors should be considered on a case by case basis and are not a necessary or complete list. *Id.* In this court's view, the major *Pioneer Investment* factor applicable to this matter is whether the delay in filing the proof of claim was beyond the reasonable control of Van Zoeren.

■ Van Zoeren did not hire a personal attorney regarding the Debtor's chapter 11 until sometime during the fall of 1992. The late proof of claim was filed on March 26, 1992. Because Van Zoeren did not have personal counsel prior to filing the proof of claim, whether Van Zoeren's *individual actions* constitute excusable neglect must be focused upon.[9]

Van Zoeren admitted he knew of the anticipated claims bar date approximately thirty to forty-five days before it expired. Van Zoeren made a *conscious decision* not to file a proof of claim assertedly believing a waiver of his unfiled claim would be the best alternative for the reorganization of the Debtor. Because Van Zoeren was responsible for filing the claim, the ability to file timely was wholly within his control. Nevertheless, Van Zoeren, balancing his

7. This court finds it impossible to believe any argument these documents were erroneously filed with a debtor's attorney instead of the clerk of court pursuant to FED.R.BANKR.P. 5005(c). Such a conclusion would mean every time a debtor's principal and debtor's counsel produce some type of work product, an erroneous filing has resulted. This is not the intent of FED.R.BANKR.P. 5005(c).

8. Van Zoeren directs the court to various documents directly filed with the court to establish an informal proof of claim, i.e., "the original master list of creditors, the list of the twenty highest unsecured creditors, financial statements, and cash flow and other financial projections incorporated into the original Chapter 11 plan of reorganization." (Closing Argument of Van Zoeren in Support of Motion for Allowance of Unsecured Claim at 2.) These documents fail to establish an informal proof of claim for the same reasons the exhibits failed. The docu-

ments establish the debt but totally fail to evidence a demand by Van Zoeren for payment or an intent to hold the estate liable.

9. This is one of those cases where the blame for missing a filing date does not allegedly fall upon an attorney. The fact Van Zoeren did not hire a personal bankruptcy attorney until after the claims bar date makes *Pioneer Investment's* fifth factor, whether clients should be penalized for counsel's mistake, a nonfactor. Additionally, because no plan of reorganization has been confirmed and the Debtor continues in chapter 11 as a debtor in possession, this court views the delay to the debtor and any impact on efficient court administration as nonfactors. To the extent these may be valid considerations, they may cut against Van Zoeren's argument; if Van Zoeren's late claim is now allowed, it may be argued that it will be less likely Abraham will continue its competing plan efforts.

desire to reorganize the Debtor with his desire to receive payment on his claim, consciously decided not to timely file a claim.

Van Zoeren's subsequent decision to file the late claim was based on two prospects. First, the possibility the Debtor's reorganization plan would not succeed was becoming more real. Second, because this court denied the Debtor's motion to extend the exclusivity period on March 20, 1992, Van Zoeren became aware of the possibility of a competing plan being filed.[10]

Based on these facts, this court finds the delay in filing the claim was *not* beyond the reasonable control of Van Zoeren. At the time the expiration of the bar date approached, Van Zoeren believed not filing the proof of claim was in his best interests as the sole shareholder and president of the Debtor. He believed he could bargain his unfiled claim to obtain confirmation of the Debtor's plan and retain personal control of the reorganized corporation. Nevertheless, regardless of Van Zoeren's apparent optimism, the potential that a plan may not be confirmed, a case may be converted, a trustee may be appointed, or a competing plan may be confirmed are always distinct possibilities in a chapter 11 case.

Establishing a claims bar date does not guarantee the debtor will be the party who obtains confirmation of a plan and will pay allowed claims in accordance with the plan. A prudent creditor must file a timely claim (unless its claim is deemed allowed under § 1111(a)) to protect his economic interest. Although Van Zoeren may have made a bad decision in failing to timely file his claim, making such a conscious decision is

not "excusable". Indeed Van Zoeren's decision is not "neglect"—it was a voluntary omission within his sole control.[11] Van Zoeren's attempted legal legerdemain lacks lucidity. His motion is denied.

### B. *Should Abraham be Permitted to File a Competing Plan?*

■ Abraham requests permission to file a competing plan of reorganization. FED. R.BANKR.P. 3016(a) establishes a limited restriction for filing a competing plan.

> A party in interest, other than the debtor, who is authorized to file a plan under § 1121(c) of the Code, may not file a plan after entry of an order approving a disclosure statement *unless confirmation of the plan relating to the disclosure statement has been denied or the court otherwise directs.*

FED.R.BANKR.P. 3016(a) (emphasis added).

Pursuant to the rule, a competing plan proponent must satisfy two requirements. "First, it must be a party in interest. Second, it must be 'qualified' under section 1121(c). Having satisfied the requirement of being a party in interest, the party is 'qualified' if the debtor has not filed (and obtained acceptance of) a plan within the required time." 8 L. KING, COLLIER ON BANKRUPTCY ¶ 3016.03 (15th ed. 1992).[12] One effect of FED.R.BANKR.P. 3016(a) is to prohibit the filing of a competing plan until after a debtor's exclusivity period expires. *Id.*

If the debtor's disclosure statement is approved and confirmation of the plan is denied, competing plans may be filed without permission of the court. However, absent *denial* of confirmation of a plan, the

---

**10.** Van Zoeren's proof of claim was filed six days after the court's decision not to extend the exclusivity period.

**11.** The other relevant *Pioneer Investment* factor is whether the creditor acted in good faith. 943 F.2d at 677. Van Zoeren's good faith in filing the late claim is questionable. Van Zoeren admitted the reason for the late claim was because of the possibility of Abraham filing a competing plan of reorganization. Van Zoeren is willing to waive the unsecured claim for his (the Debtor's) plan of reorganization but not for another party's plan of reorganization. While this may

constitute sound personal business judgment, from the standpoint of the debtor in possession and the reorganization process to benefit its creditors, Van Zoeren's motives are problematic.

**12.** The court has been unable to locate any reported decision which discusses FED. R.BANKR.P. 3016(a) in detail. Because any analysis regarding the ability of creditors to file competing plans is generally found in the context of a request to extend or reduce the exclusivity period, § 1121(c) cases are helpful to this court's analysis. *See infra* n. 15.

rule prohibits filing of a competing plan unless the "court otherwise directs". In this case, there has been no denial of confirmation of the Debtor's First Amended Plan of Reorganization. Therefore, Abraham's motion to file its competing plan is appropriately at issue.

Section 1121(c) provides, in pertinent part:

> Any party in interest, including ... a creditor ... may file a plan if and only if—
>
> (1) a trustee has been appointed under this chapter;
>
> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
>
> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

These exclusivity periods may be reduced or increased for cause. 11 U.S.C. § 1121(d).

▮▮▮ The purpose of § 1121 is twofold. First, it allows the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan. Second, it ensures creditors will not endure unreasonable delay after a debtor files chapter 11. *In re River Bend–Oxford Assocs.*, 114 B.R. 111, 114 (Bankr.D.Md.1990); *cf. United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd*, 484 U.S. 365, 378–79, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988) (creditors must bear a reasonable delay imposed by the automatic stay

to allow the debtor to formulate a reorganization plan). Section 1121 "furthers the purpose of a rehabilitation, while recognizing that Chapter 11 is not a mechanism through which a debtor may operate indefinitely without attempting to reorganize." *River Bend–Oxford Assocs.*, 114 B.R. at 114. Absent an extension of the exclusivity period under § 1121(d), "a debtor should not be permitted to continue to put off creditors having plans of their own." *In re Parker Street Florist & Garden Ctr., Inc.*, 31 B.R. 206, 207 (Bankr.D.Mass.1983).

FED.R.BANKR.P. 3016(a) supplements the Code exclusivity provisions of chapter 11. Reading the Code and rule together evidences Congress' intent to allow the filing of competing plans after the debtor has had a reasonable time to propose and confirm a plan of reorganization.[13] Although the chapter 11 debtor should be allowed a first attempt to confirm a plan, parties in interest should not be held hostage by a chapter 11 debtor. If a debtor fails to produce or confirm a plan within the time parameters of § 1121, FED.R.BANKR.P. 3016(a) contemplates that other parties in interest may file competing plans of reorganization. This result is not prejudicial because the debtor retains the ability to attempt to confirm its own plan of reorganization. In some instances, authority to file a competing plan may additionally motivate the debtor to more earnestly negotiate an acceptable consensual plan.

The ability to file a competing plan, thereby allowing creditors to cast ballots for multiple plans, also encourages a chapter 11 policy of "creditor democracy".[14]

---

**13.** The legislative history to § 1121 is somewhat helpful.

> Proposed chapter 11 recognizes the need for the debtor to remain in control to some degree, or else debtors will avoid the reorganization provisions in the bill until it would be too late for them to be an effective remedy. At the same time, the bill recognizes the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company.

H.R.REP. No. 595, 95th Cong., 1st Sess. 231–32 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191. "An [exclusivity period] extension should not be employed as a tactical device [by the debtor] to put pressure on parties in interest to

yield to a plan they consider unsatisfactory." S.REP. No. 989, 95th Cong., 2d Sess. 118 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5904.

**14.** Other courts have discussed the implied Bankruptcy Code policy of creditor democracy. *See In re DRW Property Co.*, 54 B.R. 489, 497 (Bankr.N.D.Tex.1985) (the Bankruptcy Code provisions regarding the chapter 11 plan encompass the policy of creditor democracy within the debtor reorganization process); *In re Barrington Oaks Gen. Partnership*, 15 B.R. 952, 957 (Bankr. D.Utah 1981) (In analyzing the relation of § 1124 impairment of classes to the absolute priority rule of § 1129(b), Judge Mabey acknowledged that critics of the absolute priority rule "questioned whether this degree of judicial

The creditor body benefits because a competing plan allows each individual creditor to decide which plan best comports with its respective economic interests. Unless there exists some countervailing Code provision or bankruptcy policy which mandates to the contrary, creditors should be allowed to propose and vote on a competing chapter 11 plan.[15]

Pursuant to the plain language of § 1121(c)(3), a creditor may file a reorganization plan if the debtor has not filed a plan which has been accepted by all impaired classes within the exclusivity period. Because the exclusivity period has expired and the Debtor's First Plan of Reorganization was not accepted by all impaired classes, § 1121(c)(3) authorizes parties in interest to file competing plans.[16] Abraham has this right.

The court believes it is in the best interests of all parties to put both the Debtor's Second Amended Plan and Abraham's proposed plan on the same confirmation track.

Upon approval of Abraham's disclosure statement and any possible amended disclosure statement by the Debtor, both plans will be transmitted to the creditor body for concurrent voting on a single ballot. The creditors may accept one or both plans. Confirmation hearings on the two plans will be scheduled on the same date and time. Creditors and interest holders will be able to review and analyze both plans (on an equal footing) and decide which plan best satisfies their interests. This result comports with the Code, is not prejudicial to the Debtor, and promotes collective decision-making in a creditor democracy.

### C. Sua Sponte Appointment of a Chapter 11 Trustee.

The Bankruptcy Code authorizes the court to order appointment of a trustee, *inter alia*, for "cause" or when the "appointment is in the interest of creditors . . . ." 11 U.S.C. § 1104(a)(1)–(2).[17]

---

control [strikes] a proper balance between creditor democracy and the fairness of a plan."). This judge has also acknowledged the policy of "creditor democracy" in the context of the right of creditors to participate in the election of a chapter 7 trustee. *Matter of Lindell Drop Forge Co.*, 111 B.R. 137, 143 (Bankr.W.D.Mich.1990).

Professor Jackson also recognizes creditor involvement in bankruptcy proceedings. *See* T. JACKSON, THE LOGIC AND LIMITS OF BANKRUPTCY LAW 167–68 (1986). Creditors have the right to be heard and deference should be given to their views especially in a case involving an insolvent chapter 11 debtor. The group of creditors that should have the most decision-making authority will often be the class of unsecured creditors. *Id.* at 167. "Once it becomes clear that there will not be enough to pay the creditors in full, continuing the decision-making authority in the hands of shareholders and their agents effectively separates the decision maker from the group that stands to gain or lose as a consequence of the decision." *Id.* In instances when a debtor in possession controls the corporate affairs, the shareholders, represented by the management of the debtor, should not have the *sole* decision-making power. This judge believes that authorizing a creditor to file a competing plan to be voted on by other creditors is consistent with this bankruptcy goal.

**15.** One countervailing Code provision is the Congressional decision to give the debtor at least the "first shot" to propose and confirm a plan. Discussion of this consideration appears in a number of reported decisions. *See, e.g., Tranel v. Adams Bank & Trust Co. (In re Tranel),*

940 F.2d 1168 (8th Cir.1991); *In re Grand Traverse Dev. Co. Ltd. Partnership,* 147 B.R. 418 (Bankr.W.D.Mich.1992); *Matter of All Seasons Indus., Inc.,* 121 B.R. 1002 (Bankr.N.D.Ind. 1990); *In re Parker Street Florist & Garden Ctr., Inc.,* 31 B.R. 206 (Bankr.D.Mass.1983).

**16.** The court acknowledges a cram down hearing for the First Amended Chapter 11 Plan was scheduled but never held. An order denying confirmation of the First Amended Chapter 11 Plan was never entered by this court. FED. R.BANKR.P. 3016(a) authorizes the court to allow the filing of a competing plan if confirmation is denied or as "the court otherwise directs". Because the Debtor filed a Second Amended Chapter 11 Plan on February 5, 1993, the cram down hearing on the First Amended Chapter 11 Plan will never be held. In effect, the First Amended Chapter 11 Plan has been impliedly denied or withdrawn. However, because an order denying confirmation of the First Amended Chapter 11 Plan has not yet been entered, this court will utilize the "otherwise directs" language of FED. R.BANKR.P. 3016(a) to authorize the filing of Abraham's competing plan. The court will also now deny confirmation of the Debtor's First Amended Plan of Reorganization.

**17.** "Cause" to appoint a chapter 11 trustee is not defined in the Bankruptcy Code. However, this court has previously addressed "cause" under § 1104(a) in a different context. *Matter of Holly's, Inc.,* 140 B.R. 643, 685–86 (Bankr. W.D.Mich.1992).

This Code section requires that appointment be pursuant to a "request of a party in interest or the United States Trustee, and after a notice and hearing...." *Id.*

■ May a bankruptcy judge *sua sponte* raise the issue whether a chapter 11 trustee should be appointed? This judge strongly believes the court may do so under appropriate circumstances with requisite procedural safeguards. "No provision of [the Bankruptcy Code] providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, *or to prevent an abuse of process.*" 11 U.S.C. § 105(a) (emphasis added).[18] *Cf. In re Daily Corp.,* 72 B.R. 489 (Bankr.E.D.Pa.1987) (court may *sua sponte* dismiss chapter 11 case).

■ This judge also strongly believes it is improper to *sua sponte* raise such an issue unless persuasive evidence comes to the court's attention on the record which may lead to a conclusion that cause exists or an abuse of process is occurring. The court should not rely upon any extrajudicial knowledge that may be received, e.g., a letter to the court clerk, and should not launch an investigation or become involved in administrative matters. However, upon learning of sufficient evidence from the record, it is proper for the court to raise the issue and allow interested parties to appear and be heard.[19]

In this case, after considering Van Zoeren's testimony at the hearing, the court is very concerned regarding his goals and motives. Is he acting in accordance with the fiduciary obligation of the debtor in possession, or is he selfishly focusing solely on his own interests? Although the court has serious concerns over Van Zoeren's (and the Debtor's) good faith or lack thereof, given the current record, the court has not made any explicit finding of bad faith. Although the court has suspicions, the court is not yet convinced cause to appoint a chapter 11 trustee may exist or an abuse of process is now occurring.

Nevertheless, it is appropriate to establish certain procedural safeguards for the confirmation process of the competing plans. Van Zoeren, as the managing officer of the Debtor, shall make certain the Debtor is prudently operating its business during the sensitive period when creditors shall review and vote on the competing reorganization plans. He shall take no action, whether affirmatively or by omission, that will result in adverse business consequences to the precarious economic health of the corporate debtor. Van Zoeren shall act in accordance with his fiduciary obligations, as contrasted to his personal desires, to assure a "level playing field" is maintained until the conclusion of the confirmation hearings on the competing plans.

Because both the creditors' committee and Abraham have sufficient incentive to monitor the Debtor's business activities (and Van Zoeren's business judgments), the court now declines to exercise its discre-

---

**18.** Two leading commentators seem to disagree as to whether the court may act *sua sponte* to appoint a chapter 11 trustee. *Compare* 5 L. KING, COLLIER ON BANKRUPTCY ¶ 1104.01, at 1104–9 n. 35a (15th ed. 1992) *with* 3 W. NORTON, NORTON BANKRUPTCY L. & PRAC. § 53.02 (1991). This apparent disagreement may be more theoretical than real. This judge agrees with COLLIER's assertion that § 105(a), improperly used, may "create mischief" when the court acts both as prosecutor and fact-finder "to prove to itself" appointment of a trustee is necessary. COLLIER, *supra,* ¶ 1104.01, at 1104–9 n. 35a. This judge also agrees with NORTON's position that the bankruptcy court may raise the issue on its own initiative, i.e., make "its own motion for appointment". NORTON, *supra,* § 53.02. NORTON's view contemplates a hearing at which time the interested parties, including the debtor, creditors, and the U.S. Trustee, may appear and be heard. Reported cases holding to the contrary were decided before the 1986 amendment to § 105. *Id.*

**19.** Recently Judge Stevenson made extensive findings relating to a chapter 11 debtor's bad faith pursuant to evidence presented at a relief from stay hearing. Given the compelling element of bad faith, she *sua sponte* scheduled a hearing regarding whether a trustee should be appointed, or dismissal or conversion of the case was warranted. *In re Grand Traverse Dev. Co. Ltd. Partnership,* 150 B.R. 176 (Bankr. W.D.Mich., 1993).

tionary power to *sua sponte* hold a hearing regarding the possible appointment of a chapter 11 trustee. However, if a party in interest knows of other facts which demonstrate "cause", show that the appointment of a trustee is in the best interests of creditors, or indicate an abuse of process is occurring, upon filing a motion the court will promptly schedule a hearing.

## V. CONCLUSION

For the reasons stated above, the court holds: (1) Van Zoeren has not filed a timely informal proof of claim with the court; (2) the untimely filed proof of claim will not be allowed pursuant to an excusable neglect theory; (3) Abraham is authorized to forthwith file a competing plan (and disclosure statement); and (4) confirmation of the Debtor's First Amended Plan of Reorganization is denied. The court also determines it has power to *sua sponte* raise the issue of appointment of a chapter 11 trustee but, under the known existing facts, now declines to do so.

An order shall be entered accordingly.