In re **LANDMARK PARK PLAZA LIMITED PARTNERSHIP,**
Debtor.

Bankruptcy No. 93–51951.
Document No. 142–1, 142–2.

United States Bankruptcy Court,
D. Connecticut.

June 15, 1994.

Cheever Tyler, Dean W. Baker, Wiggin & Dana, New Haven, CT, for debtor.

James Berman, Zeisler & Zeisler, P.C., Gerald T. Weiner, Weinstein, Weiner & Shapiro, Bridgeport, CT, for World Plan Executive Council—U.S.

Andrew M. DiPietro, Jr., DiPietro, Gulliver & Wright, New Haven, CT, for David T. McElroy.

David B. Greenberg, c/o Corp. Counsel, New Haven, CT, for City of New Haven.

John Carberry, David J. Lustberg, Cummings & Lockwood, Stamford, CT, for F.D.I.C.

Michael J. Boyle, New Haven, CT, for Local 217, Hotel and Restaurant Employees.

## MEMORANDUM OF ORDER ON MOTION FOR AUTHORIZATION TO FILE A RIVAL PLAN UNDER CODE § 1121(C)

ALAN H.W. SHIFF, Bankruptcy Judge.

At a hearing on June 9, 1994, I ruled that a rival plan could be filed by an unsecured creditor even though the disclosure statement for the debtor's plan has been approved. This memorandum explains the basis for that decision.

## BACKGROUND

This chapter 11 case was commenced on June 9, 1993. The debtor's sole asset is a hotel located in New Haven, Connecticut. The debtor did not seek an extension of the 120 day period during which it had the exclusive right to file a plan. See § 1121(b), (d). It filed a plan and disclosure statement on February 14, 1994; a first amended plan and disclosure statement on April 4, 1994; and a second amended plan and disclosure statement on April 25, 1994. The debtor's disclosure statement was approved on April 28, 1994, and the date for the confirmation hearing on its plan is set for June 27, 1994.

On June 3, 1994, unsecured creditor World Plan Executive Council—U.S. ("WPEC") filed a motion (the "Authorization Motion") for permission to file a rival plan and requested the court to shorten the time for hearings on the adequacy of its disclosure statement and on the confirmation of its plan, so that the confirmation hearing could be coordinated with the debtor's confirmation hearing. The debtor objected on June 6, 1994.

Both plans propose the sale of the hotel. Under the debtor's plan, the proposed buyer is The Cordish Company; under the WPEC plan, the proposed buyer is WPEC. The plans treat all classes of claims identically, except class 6, the secured claim of the Federal Deposit Insurance Corporation ("FDIC"), and class 7, the class of unsecured creditors, which is dominated by the unsecured portion of the FDIC's claim. Class 6 will be paid $1,100,000.00 under WPEC's plan and $1,000,000.00 under the debtor's plan. Class 7 will be paid $15,000.00, or about .003% of all allowed unsecured claims, under WPEC's plan and $5,000.00, or about .001%, under the debtor's plan. Neither plan contains a provision for allowance of higher or better offers from other potential purchasers. The WPEC plan proposes the rejection of a collective bargaining agreement with the debtor's employees. At the hearing on the Authorization Motion, counsel for WPEC indicated that he had just obtained a copy of that agreement and might amend its plan to provide for the assumption of that agreement. The debtor's plan is contingent on an

examination of the debtor and the property by its buyer; the WPEC plan apparently contains no such contingency.

## DISCUSSION

 Rule 3016(a), Fed.R.Bankr.P., provides:

> **Time for Filing Plan.** A party in interest, other than the debtor, who is authorized to file a plan under § 1121(c) of the Code may not file a plan after entry of an order approving a disclosure statement unless confirmation of the plan relating to the disclosure statement has been denied *or the court otherwise directs.*

(emphasis added).

The issue here centers on the words "or the court otherwise directs." Rule 3016(a) provides an exclusive period for plan proponents whose disclosure statements have been approved under § 1125. But since that extension is only available after a debtor's exclusive period has terminated, it should be narrowly construed so that the maximum benefit to all creditors may be achieved. Thus, for the reasons that follow, Rule 3016(a) should be read to allow a rival plan to be filed after approval of a disclosure statement but before confirmation of a plan already on file if the rival plan: (1) is filed in good faith, e.g., it is not filed to extort better treatment or unduly delay the confirmation process, and (2) has the prospect of maximizing the benefits of chapter 11 to all creditors, i.e. is not frivolous.

### 1. The Meaning of the Rule

 A search for the meaning of a statute or rule generally starts with the words it employs. *Cf. United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). In this case, words that are missing are of particular significance. Rule 3016(a) does not state that the court may grant permission to file a competing plan only "for cause," which is the phrase Congress commonly employs when it intends the court to find and articulate justification for its order. For example, the court may reduce or increase the debtor's exclusivity period only for cause, requiring it to consider factors such as the size and complexity of the case, the likelihood of an imminent consensual plan, the existence of alternative substantial plans, and an analysis of whether the debtor is attempting to hold creditors "hostage" by refusing them the opportunity to file a competing plan. *In re Public Service Co. of New Hampshire,* 88 B.R. 521, 537 (Bankr.D.N.H.1988). On its face, Rule 3016(a) gives me unfettered discretion to permit the filing of a competing plan after approval of a disclosure statement for an existing plan.

Arguably, the fact that the rule provides for a general prohibition on the filing of competing plans, and then provides for an exception *if* the court otherwise directs, could suggest that, as a general rule, no competing plan should be allowed, except in extraordinary circumstances. I decline to adopt that construction. A better explanation for the general prohibition is to ensure that a rival plan will not be filed for an improper purpose.

It is also significant that Rule 3016(a) selects the "entry of an order approving a disclosure statement" as the event which triggers the need to obtain prior court approval to file a competing plan. That timing supports the view that the drafters were concerned about bad faith or frivolous attempts by parties to interfere with an existing plan in order to extort better treatment or cause the dismissal or conversion of the case. After a disclosure statement has been approved and all parties are on notice of their proposed treatment, the plan proponent is particularly vulnerable to bad faith efforts to extort more favorable treatment or other devices which will unfairly interfere with the confirmation process.

Moreover, the history of Rule 3016(a)'s adoption does not suggest a narrow reading. The 1983 Advisory Committee Note described the rule's purpose:

> This rule implements the Code provisions concerning the filing of plans in chapters 9 and 11.... Section 1121(c), while permitting parties in interest a limited right to file plans, does not provide any time limitation. This subdivision sets as the deadline, the conclusion of the hearing on the disclosure statement. The court may, however, grant additional time. It is derived from former Chapter X Rule 10–301(c)(2) which used, as the cut-off time, the conclusion of

the hearing on approval of a plan.... Under § 1121(c), parties other than a debtor may file a plan only after a trustee is appointed or the debtor's exclusive time expires.

(emphasis added). Again, this explanation is primarily helpful for what it does not say. It suggests no restrictive standard as to the court's discretion to allow the filing of a competing plan. Had the drafters intended that such a filing be permitted only in "unusual and extraordinary" circumstances, as the debtor suggests, Debtor's Memorandum of Law, filed June 8, 1994, at p. 3, surely they would have given some indication to that effect in their commentary.[1]

I next turn to prior judicial interpretations of Rule 3016(a). The debtor and WPEC agree that only one case has discussed the rule in any depth. In *Matter of Mother Hubbard, Inc.*, 152 B.R. 189 (Bankr. W.D.Mich.1993), the debtor's disclosure statement had been approved and the plan was rejected by the class of unsecured creditors. A cram down hearing was scheduled, but the debtor filed an amended plan, thus "impliedly abandoning its cram down efforts." *Id.* at 191. However, no order denying confirmation of the original plan was entered, and an unsecured creditor sought leave to file a competing plan. The court held:

> Reading the Code and [Rule 3016(a)] together evidences Congress' intent to allow the filing of competing plans after the debtor has had a reasonable time to propose and confirm a plan of reorganization. Although the chapter 11 debtor should be allowed a first attempt to confirm a plan, parties in interest should not be held hostage by a chapter 11 debtor.... The ability to file a competing plan, thereby allowing creditors to cast ballots for multiple plans, also encourages a chapter 11 policy of "creditor democracy".... Un-

less there exists some countervailing Code provision or bankruptcy policy which mandates to the contrary, creditors should be allowed to propose and vote on a competing chapter 11 plan.

*Id.* at 195–96 (footnotes omitted). The court utilized the "otherwise directs" language of Rule 3016(a) to permit the filing of the competing plan, and placed the two pending plans on a parallel confirmation track. *Id.* at 196 & n. 16.

*Mother Hubbard* is distinguishable, because the original plan was apparently no longer viable, but nevertheless supports a conclusion with which I agree, i.e. that after termination of the debtor's exclusive right to file and confirm a plan under § 1121, a court should exercise its discretion under Rule 3016(a) to allow the filing of a competing plan unless there is a compelling reason not to do so, as opposed to the converse perspective advocated by the debtor.

#### 2. Effect of § 1121 on Rule 3016(a)

Section 1121 provides in relevant part:

(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c) Any party in interest ... may file a plan if and only if—

> (1) a trustee has been appointed under this chapter;

> (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

> (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

---

1. The original text of Rule 3016(a) was:
 A party in interest, other than the debtor, who is authorized to file a plan under § 1121(c) of the Code, may file a plan at any time before the conclusion of the hearing on the disclosure statement or thereafter with leave of court. It was amended to its present form in 1991. The Advisory Committee Note indicates that the amendment was designed to "enlarge the time for filing competing plans" by requiring court

leave only if the order approving the disclosure statement had actually been entered and a decision not yet rendered on confirmation of the original plan. That amendment supports the argument that the drafters were primarily concerned with the integrity of the confirmation process. It does not suggest that the court should apply an onerous standard in determining whether to grant leave to file a competing plan.

(d) On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180–day period referred to in this section.

The legislative history of § 1121 recognizes that unless management is given a period of time after bankruptcy to remain in possession, so that the rehabilitative function of chapter 11 can be utilized, it may delay filing, and thus defeat the public policy goals of bankruptcy. At the same time, the drafters recognized "the legitimate interests of creditors, whose money is in the enterprise as much as the debtor's, to have a say in the future of the company." H.R.Rep. No. 595, 95th Cong., 1st Sess. 231–32 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 5963, 6191.

Here, the debtor opposes WPEC's attempt to file a rival plan. That opposition is tantamount to a *de facto* extension of the debtor's exclusive period. I conclude, however, that § 1121 does not support an unconditional extension of the debtor's preferential treatment.

Since[ ] the debtor has an exclusive privilege for 6 months during which others may not file a plan, the granted extension should be based on a showing of some promise of probable success. An extension should not be employed as a tactical device to put pressure on parties in interest to yield to a plan they consider unsatisfactory.

S.Rep. No. 989, 95th Cong., 2d Sess. 118 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5904 (footnotes omitted).

It is thus apparent that § 1121 represents a congressional balancing of the debtor's right to have the first opportunity to propose a reorganization plan with the creditors' right to file a plan to protect their interests if the debtor does not act within that measured period. Inasmuch as the debtor did not propose a plan within the exclusive period, and did not request an extension under § 1121(d), the debtor's rights are diminished, and parties in interest have the right to file competing plans. To read Rule 3016(a) as somehow extending the statutory exclusive period, without showing the cause required

by § 1121(d), and prohibiting a party in interest from filing a good faith, nonfrivolous competing plan, would create an impermissible conflict between the rule and § 1121. *See United States v. Vecchio (In re Vecchio),* 20 F.3d 555, 559 (2d Cir.1994) (a rule of procedure which contravenes a code provision cannot stand); 28 U.S.C.A. § 2075 (West 1994) (bankruptcy rules "shall not abridge, enlarge, or modify any substantive right").

The debtor's principal argues that since § 1121 is silent as to the cutoff for rival plans, Rule 3016(a) is intended to supply that date. The argument appears to be that if the debtor does not file within its exclusive period, a creditor may do so under § 1121(c) unless or until the debtor files a plan and obtains approval of its disclosure statement. At that point, Rule 3016(a) cuts off the creditor's right to file a rival plan. I disagree. First, such a reading in that context would eliminate creditors' rights under § 1121(c). Moreover, that reading shifts the burden to the creditor, but as noted *infra,* after the debtor has lost the benefit of the exclusive period, the better policy is to permit a creditor to file a good faith, nonfrivolous plan that purports to maximize the benefits of chapter 11 to all creditors. *See Matter of Newark Airport/Hotel Ltd. Partnership,* 156 B.R. 444, 451 (Bankr.D.N.J.) (the debtor has the burden of justifying the extension of the exclusive period for cause), *aff'd,* 155 B.R. 93 (D.N.J.1993).

### 3. Policy Considerations

The debtor asks me to consider policy and legal concerns which, it says, argue against allowing WPEC to file a plan. First, the debtor argues that Rule 3016(a) is designed to give "comfort" to buyers from bankruptcy estates, and that if competing plans are permitted to be filed after approval of a disclosure statement, there will be a chilling effect on potential buyers. But I fail to see how Rule 3016(a), which on its face gives this court unfettered discretion to permit a competing plan to be filed at any time prior to confirmation of a pending plan, could give buyers much comfort. Buyers from bankruptcy estates are undoubtedly aware of the fact that the sale of estate assets takes place in a public forum in which competing bids are

not only possible, but should be sought by the debtor in possession as a fiduciary of the estate. Further, debtors are not prohibited from seeking authority to pay prospective purchasers a reasonable "break-up" fee to compensate them for appropriate due diligence costs in the event that their bid is unsuccessful.

Second, the debtor argues that I should consider "societal needs."[2] The debtor refers to alleged arrangements which might result in the creation of a hotel and convention center, the redevelopment of portions of downtown New Haven, and the creation of jobs. To the extent that those considerations are within the penumbra of the plan confirmation process, those issues are more likely to be exposed under § 1129(c), where two confirmable plans are considered, than under § 1129(a). While societal considerations might be relevant later in the confirmation process, they are not a basis for excluding a rival plan.

Third, the debtor claims that if I permit the WPEC plan to be filed, there is a risk that its buyer, The Cordish Company, will withdraw its offer, leaving only WPEC, which may then reduce its bid. I am sensitive to that possibility, and WPEC's permission to file has been conditioned on the provision of satisfactory evidence of both WPEC's contractual duty and financial ability to perform the purchase it has proposed in its plan.

Fourth, the debtor states that it has negotiated arrangements with certain priority creditors and with the labor union. If those entities do not reach satisfactory agreements with WPEC, I presume that they will object to the WPEC plan. If their objections have merit, that plan cannot be confirmed even if it has obtained overwhelming acceptance by the other creditors.

Finally, the debtor complains of the increased administrative costs and delay which will allegedly result if WPEC is permitted to file its plan. The concern about cost is unpersuasive, as there has been no showing that increased administrative expenses will be disproportionate to the benefit of a joint

confirmation process. The debtor claims that a delay of its confirmation hearing will result in the FDIC pursuing relief from the automatic stay and in the closing of the hotel by the fire marshall. However, WPEC has agreed, and I have ruled, that there will be no delay of that hearing.

I am more persuaded by the policy considerations which favor a permissive reading of Rule 3016(a). One such policy is that creditors should be given the opportunity to consider competing plans to determine what is in their best interests. That policy is evidenced by § 1129(c), which provides in relevant part:

> [T]he court may confirm only one plan.... If the requirements of subsections (a) and (b) of this section are met with respect to more than one plan, the court shall consider the preferences of creditors and equity security holders in determining which plan to confirm.

*See In re River Village Assocs.*, 161 B.R. 127, 142–143 (Bankr.E.D.Pa.1993) (confirming creditor's liquidating plan, preferred by the creditors, over debtor's reorganization plan); *Matter of Mother Hubbard, Inc., supra,* 152 B.R. at 195–96; *In re Turner Eng'g, Inc.,* 109 B.R. 956, 960–61 (Bankr.D.Mont.1989) (confirming the debtor's plan over that of the unsecured creditors' committee, even though the latter proposed a higher dividend to unsecured creditors, where the ballots indicated that the former was preferred by the unsecured creditors and the debtor's sole shareholder). Another policy, applicable here because the debtor and WPEC propose to sell the debtor's assets, is that the "bankruptcy court's principal responsibility ... is to secure for the benefit of creditors the best possible bid." *Consumer News and Business Channel Partnership v. Fin. News Network, Inc. (In re Fin. News Network, Inc.),* 980 F.2d 165, 169 (2d Cir.1992).

### 4. Motion to Shorten Time

■ The debtor contends that cause has not been established to shorten the time

---

**2.** The debtor cites *In re After Six, Inc.,* 154 B.R. 876, 882 (Bankr.E.D.Pa.1993) for the proposition that a court could approve a lower bid where the lower bidder had other factors, *including* societal

needs, in its favor. The debtor acknowledges that that discussion was dicta, and that the court in fact approved the higher bid supported by the debtor in possession in that case.

under Rule 9006(c)(1), Fed.R.Bankr.P., for notice of the disclosure statement and confirmation hearings on the WPEC plan. I disagree. If the debtor's confirmation hearing occurs before the hearing on WPEC's plan, WPEC's plan may be rendered moot to the detriment of the creditors. *Cf. In re Holland*, 85 B.R. 735, 737 (Bankr.W.D.Tex.1988) (shortening notice period for hearing on debtor's disclosure statement so that it could be heard at same time as creditor's motion to dismiss). The debtor argues that WPEC's need to shorten the time results from WPEC's lack of diligence, but it offers no evidence of that assertion. Further, as noted, the debtor argues it will be prejudiced if the hearing on its plan is delayed. The only way to accommodate the interests of both the creditors and the debtor is to shorten the time for consideration of WPEC's disclosure statement and plan, so that the creditors may be exposed to both plans simultaneously, and the confirmation hearing on both plans may go forward on the date originally scheduled. I reject the argument that the creditors, who would receive a greater distribution under the WPEC plan, will somehow be prejudiced if their notice of the pendency of that plan is shortened.[3]

## CONCLUSION

Having concluded at the June 9, 1994 hearing that WPEC's proposed plan would be filed in good faith and had the prospect of maximizing the benefits of chapter 11 to all creditors, I ruled that its Authorization Motion should be granted. That ruling is restated here.

---

**3.** The debtor suggests that WPEC's counsel stated in open court at an earlier hearing that it would not make a bid unless the debtor's plan was not confirmed. The Cordish Company, which allegedly changed its position in reliance on that statement, has not appeared to make any argument that WPEC should be estopped by its counsel's alleged statements. Nor has the debtor offered a transcript into evidence which would support any claim that WPEC waived its right under § 1121(c) to present a competing plan.