In re Charles and Martha
DIX, Debtors.

Charles and Martha DIX, Appellants,

v.

Theodore JOHNSON, Jr., Appellee.

BAP No. SC–88–1017 JASV.
Bankruptcy No. 8404027–P11.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Sept. 14, 1988.

Decided Dec. 30, 1988.

Diane H. Sparrow, Ravreby & Shaner, Carlsbad, Cal., for appellants.

Eric V. Benham, Sullivan, Delafield, McDonald & Middendorf, San Diego, Cal., for appellee.

Before JONES, ASHLAND and VOLINN, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

The Debtors appeal a bankruptcy court order granting a creditor's motion for an

extension of time in which to file a proof of claim. For the following reasons, we AFFIRM.

## FACTS

The Appellants, Charles and Martha Dix ("Debtors"), filed a Chapter 11 petition on September 19, 1984. The Appellee, Theodore Johnson ("Johnson"), filed a Chapter 11 petition on February 22, 1985. Attorney Joe N. Turner ("Turner") represented both the Debtors and Johnson in their respective bankruptcy proceedings until December 18, 1986, when Turner withdrew from the Dix case. Turner has continued to represent Johnson in his Chapter 11 case.[1]

Prior to the filing of both bankruptcy petitions, Charles Dix and Theodore Johnson had both a business and personal relationship. Johnson is a building contractor and had first met Dix when he was hired to build Dix's house. In 1972 Johnson and Dix jointly purchased a house which was eventually lost through foreclosure. Johnson contends that between 1972 and 1983 he gave Dix nearly $100,000 for various partnership investments which Dix managed.

Between 1977 and 1983 Johnson operated a construction business known as Johnson Construction Company. The business was organized as a partnership between Johnson and Arthur Schulman. According to Johnson, Schulman handled the management and finances of the business and Johnson oversaw the actual construction. Johnson contends that when Schulman died in 1983, he retained Dix to handle the financial matters of the business.

After Schulman's death, Turner undertook the representation of both Dix and Johnson in winding up the affairs of the construction business. In 1985 Dix and Johnson were sued by Jack Tollenaar, the executor of Schulman's estate, for an accounting and for monies allegedly due arising out of their activities in operating the construction business after Schulman's death. Turner represented both Dix and Johnson in this lawsuit. Johnson contends that over the course of the litigation

against Tollenaar, he acquired information indicating that Dix had mismanaged the finances of the construction business and had taken as much as $100,000 out of the business for his own purposes.

The Debtors had not listed Johnson as a creditor in the schedules accompanying their Chapter 11 petition. The bar date for filing complaints objecting to dischargeability was December 25, 1984. The bar date for filing proofs of claim was November 1, 1985. In November 1987, Johnson filed a motion to extend the time for filing complaints objecting to dischargeability and proofs of claim. The bankruptcy court denied the extension to file a dischargeability complaint on the ground that it lacked the discretion to do so. This order was not appealed. However, the court granted Johnson an extension of time in which to file a proof of claim on the grounds that Johnson was unaware of his claim against the Debtors until after the bar date had passed, and the Debtors would not be prejudiced by the filing of the claim. The Debtors timely appealed.

On appeal, the Debtors argue that the court erred in granting the extension of time because: 1) Johnson had actual notice of the bankruptcy; 2) Johnson's attorney had actual notice of the Dix bar date because he had petitioned the court to set the bar date and that this knowledge should be imputed to Johnson; 3) there is evidence in the record indicating that Johnson was aware of a claim against the Debtors prior to the bar date; 4) the Debtors would be prejudiced by such an extension; and 5) Johnson has failed to show excusable neglect.

## STANDARD OF REVIEW

■ Whether or not to extend a bar date is a matter within the sound discretion of the bankruptcy court and such a decision will not be set aside absent an abuse of discretion. *Vancouver Women's Health Soc. v. A.H. Robins Co.*, 820 F.2d 1359, 1363 (4th Cir.1987); *In re GAC Corp.*, 681 F.2d 1295, 1301 (11th Cir.1982).

---

1. However, Turner does not represent Johnson in this appeal.

## DISCUSSION

a. *The applicable standard in determining whether to extend the time to file proofs of claim in Chapter 11 cases.*

■ Bankruptcy Rule 3003(c)(3) provides that in Chapter 11 cases, "[t]he court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed." Bankruptcy Rule 9006(b)(1) provides:

Except as provided in paragraphs (2) and (3) of this subdivision, *when an act is required or allowed to be done at or within a specified period* by these rules or by a notice thereunder or *by order of court, the court for cause shown may at any time in its discretion* (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) *on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.*

B.R. 9006(b)(1) (emphasis added).

Although Rule 3003(c)(3) states that a court may grant an extension "for cause shown", most courts have held that extensions requested *after* the bar date has passed may be granted only upon a showing of excusable neglect as required by Rule 9006(b). *See, e.g., In re South Atlantic Financial Corp.,* 767 F.2d 814, 817 (11th Cir.1985); *In re O.P.M. Leasing,* 48 B.R. 824, 830 (S.D.N.Y.1985); *In re Bajan Resorts, Inc.,* 71 B.R. 52, 54 (Bankr.D.Utah 1987); *In re Century Brass Products, Inc.,* 15 C.B.C.2d 635, 638 (Bankr.D.Conn. 1986); *In re Wm. B. Wilson Mfg. Co.,* 59 B.R. 535, 537 (Bankr.W.D.Tex.1986); *In re Hardy,* 33 B.R. 77, 79 (Bankr.D.Nev.1983) (applying excusable neglect standard to Interim Bankruptcy Rule 3001(b)(2)(B) governing the filing of proofs of claim in Chapter 11 cases).

Other courts have held that a creditor need only show "cause" for the court to permit the late filing of a proof of claim, regardless of when the extension is sought. For instance, in *In re Terex Corp.,* 45 B.R. 290, 292 (Bankr.N.D.Ohio 1985) the court noted that Rule 3003(c)(3) specifically deals with proofs of claim while Rule 9006 deals with computation of time generally and, thus, the general rule must yield to the specific. *See also In re Jartran,* 76 B.R. 123, 126 (Bankr.N.D.Ill.1987); (adopting "for cause" standard without discussion); *In re Lester Witte & Co.,* 52 B.R. 436, 437 (Bankr.N.D.Ill.1985) (holding that court has "discretion" to extend time). *See also* 8 L. King, *Collier on Bankruptcy,* § 3003.05[4] (15th Ed.1988) (citing *Terex* and stating that an extension sought even after the passage of the bar date may be granted upon a showing of cause, and that excusable neglect need not be shown).

We believe that the better view is the one adopted in the *South Atlantic, Bajan* and *Wilson Mfg.* cases, i.e., that an extension requested *prior* to the bar date may be granted upon a showing of cause, but an extension requested *after* the bar date may only be granted upon a showing of excusable neglect. This analysis accords with Rule 9006(b)(1)(2) which expressly applies to motions for extensions "made after the expiration of the specified period". Thus, contrary to the position of the *Terex* court, we believe that Rule 9006(b)(1) is the more "specific" rule to be applied.

■ The Ninth Circuit has noted that there are two standards of excusable neglect, one "strict" and one "liberal", and their application depends upon the procedural context in which the extension is sought. *In re Magouirk,* 693 F.2d 948, 950 (9th Cir.1982)[2] In *Magouirk* the court noted that excusable neglect is generally liberally construed "in those instances where the order or judgment forecloses trial on

---

**2.** *Magouirk* involved the construction of former Bankruptcy Rule 404 which gave a bankruptcy court the discretion to extend the time for filing complaints objecting to dischargeability. It is well established that current Bankruptcy Rules 4007(c) and 9006(b)(3) no longer grant a court discretion to enlarge the time for filing such complaints upon a showing of excusable neglect. *See, e.g., In re Rhodes,* 71 B.R. 206, 207–8 (9th Cir.BAP 1987). However, the discussion in *Magouirk* regarding the varying standards of excusable neglect would still seem to be valid.

**138**

the merits of a claim," such as a motion to set aside a default judgment under Fed.R. Civ.P. 60(b). *Id.* at 951. Where, however, the purpose of the extension sought is to review the propriety of a decision on the merits, such as in the context of a late filed notice of appeal, the term excusable neglect must be strictly interpreted. *Id.* at 950–951. The strict interpretation of excusable neglect requires "(1) a finding that the party failed to learn of the entry of judgment, or (2) a finding of extraordinary circumstances where excusing the delay is necessary to avoid an injustice." *Id.* at 950.

■ In contrast, under the liberal definition of excusable neglect, consideration of a broad range of factors is appropriate:

(1) whether granting the delay will prejudice the debtor;

(2) the length of the delay and its impact on efficient court administration;

(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4) whether the creditor acted in good faith; and

(5) whether clients should be penalized for their counsel's mistake or neglect.

*Id.* at 951.

■ Because the disallowance of a late filed proof of claim forecloses trial on the merits of a claim, under the standard announced in *Magouirk* we conclude that the liberal construction of excusable neglect should be applied in this context. *Accord Hardy*, 33 B.R. at 80. Accordingly, we turn to the question of whether Johnson has established excusable neglect.

b. *Whether excusable neglect has been established.*

■ With regard to the issue of prejudice, the Debtors argue that they would be prejudiced by the late allowance of Johnson's claim because a plan has now been confirmed. This argument is not persuasive. The bankruptcy court confirmed the plan after it granted Johnson the extension. Although the plan is not part of the record on appeal, we can presume that the

plan takes Johnson's claim into account. Accordingly, we reject this contention of the Debtors.

The next inquiry is the length of the delay and its impact on efficient court administration. As noted, the bar date for filing proofs of claim in the Dix bankruptcy was November 1, 1985. Johnson did not file his motion for an extension until November 1987, two years after the bar date had passed. Although in some cases a two year delay might be extraordinary, there is no indication that in this case the delay has had a negative impact on efficient court administration. As noted, at the time the court granted the extension, no disclosure statement or plan had been approved by the court. Moreover, if the bankruptcy court believed that the extension would interfere with the administration of the case, it was within the court's discretion to disallow the extension.

The question of whether the two year delay was within Johnson's reasonable control is the more difficult one in this case because there is conflicting evidence in the record as to when Johnson became aware of his claim. The record indicates that on June 4, 1985, Turner wrote a letter to the Dixes and Johnson advising them that he was becoming concerned about a possible conflict of interest between the two Chapter 11 proceedings. Turner stated:

In the first place Ted [Johnson] and Charlie [Dix] have, over the years, advanced money to or paid the expenses of the other without there ever having been any record or accounting of the transactions. Thus, I don't believe either knows whether he owes or is owed monies by the other. Secondly, I understand that there has been an as yet undefined understanding between Charlie and Ted that once the respective Chapter 11 proceedings are concluded, Ted will share in some fashion in the cactus business being generated by Charlie. Finally, Ted's Chapter 11 proceedings are in jeopardy unless Ted generates income from either his efforts on behalf of the cactus business or his construction business....

In response to this letter, both Dix and Johnson signed waivers permitting Turner to continue to represent both of them. The Debtors argue that this letter indicates that Johnson had knowledge of a potential claim against them as early as June 1985, five months prior to the bar date. However, in opposition to this contention, Turner submitted an affidavit stating that the only potential claim he was aware of at the time he wrote the letter was one which he thought might arise out of Johnson's time and effort spent working on Dix's cactus business.

In Johnson's declaration in support of the motion for an extension of time, he states that after retaining Dix in 1983 to manage the books of the construction company he "became concerned that Dix was so secretive about the finances but he would get very angry when I made inquiries and I felt dependant on Dix, so I let him retain control." In the same declaration Johnson further states that when Turner began preparing for the Tollenaar trial Johnson "began to learn" that Dix had taken money from the construction company for his own purposes. In Turner's declaration in support of the extension he states that in September 1986 he became aware of Johnson's claim against Dix arising out of the construction business.

Accordingly, there is evidence in the record which suggests that Johnson was or should have been aware of his claim approximately one year before he attempted to file his proof of claim. However, we agree with the bankruptcy court that the evidence does not establish that Johnson became aware of his claim prior to the bar date. Moreover, we note that once Johnson did become aware of his claim against Dix, he had to retain new counsel to pursue

the claim on his behalf. In our view, this would account for some of the delay.

■ As to the fourth inquiry, the Debtors do not allege that Johnson acted in bad faith and there is no evidence in the record which would so suggest. Accordingly, this factor weighs in favor of Johnson. Finally, assuming arguendo that Turner did not sufficiently advise Johnson of his rights and duties as a creditor of the Dix estate, it would be improper to penalize Johnson for Turner's neglect.[3]

After consideration of the relevant factors, we find that Johnson has established excusable neglect. Accordingly, the bankruptcy court did not abuse its discretion in granting the extension. We, therefore, AFFIRM the decision of the bankruptcy court.

---

3. The Debtors argue that Turner's actual knowledge of the Dix bar date should be imputed to Johnson. This argument is not persuasive. Turner's actual knowledge of the bar date cannot be imputed to Johnson because Turner received knowledge of the bar date in his capacity as debtor's attorney for Dix and not as creditor's attorney for Johnson. In *In re Price,* 79 B.R. 888 (9th Cir.BAP 1987) this Panel noted that in order for an attorney's notice or actual knowl-

edge to be imputed to a creditor, the attorney must receive such knowledge *while representing the client in enforcing a claim against the debtor. Id.* at 890. Given the fact that Turner was the Debtors' bankruptcy counsel, it cannot be argued that Turner represented Johnson in enforcing his claim against the Debtors. Indeed, Turner referred Johnson to another law firm upon learning of Johnson's claim against Dix.