**In re BELTRAMI ENTERPRISES, INC., Lucky Strike Coal Corp.**

**Bankruptcy Nos. 5–91–00866, 5–91–01571.**

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Dec. 29, 1994.

Ronald Santora, Wilkes–Barre, PA, for Louis Beltrami.

Donna Clark, Harrisburg, PA, for Charles Gutshall, Trustee in Bankruptcy for Beltrami Enterprises, Inc.

Charles Gutshall, Harrisburg, PA, for Trustee in Bankruptcy.

Greg Lyons, Harrisburg, PA, for Office of the U.S. Trustee.

Steven Roth, Robert Schaub, Wilkes–Barre, PA, for Pagnotti Enterprises.

Charles Shea, Kingston, PA, for Anthracite Health & Welfare Fund.

Martin J. Weis, Philadelphia, PA, for Unsecured Creditors' Committee.

Michael Beltrami, Hazleton, PA, for Concorde, et al.

James D. Newell, Pittsburgh, PA, for Frank J. McDonnell, Trustee in Bankruptcy for Blue Coal Corp.

## OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The facts in the controversy before the Court are not in dispute. Blue Coal Corporation, a bankruptcy filed to Case No. 76–1311, is a creditor of Beltrami Enterprises, Inc. and Lucky Strike Coal Corp. which are related Chapter 11 bankruptcy cases filed to 5–91–00866 and 5–91–01571 respectively. Both Beltrami and Lucky Strike listed Blue Coal as a "disputed" creditor on their schedules. In the Beltrami case, the Court set a deadline to file a proof of claim for October 15, 1991. The proof of claim deadline in the Lucky Strike Coal Corp. case was set for February 11, 1992.

Frank J. McDonnell, Esquire, Trustee in Bankruptcy for Blue Coal Corporation was represented by the law firm of Doran & Nowalis in the Blue Coal case until the fall of 1993 when the law firm of Klett, Lieber, Rooney & Schorling was retained to represent the Trustee in Bankruptcy.

It is undisputed that the Trustee and his former counsel were at all times aware of the bankruptcy filings of Beltrami and Lucky Strike and did receive notice of the proof of claim deadlines in those cases.

Upon discovering that the proof of claims were not filed in the Beltrami and Lucky Strike cases, the Trustee moved the Court for an extension of time in which to file its proof of claim which Motion was filed on or about April 18, 1994. At the time of the hearing, the Blue Coal Trustee called its former counsel John H. Doran, Esquire, to testify in support of the Motion.

The Blue Coal Trustee alleges three grounds by which it should be allowed to file a late claim. First, cause exists under Bankruptcy Rule 3003(c)(2) to justify the extension of the claims bar date because the Debtors listed substantially all of the unsecured claims as "disputed" in their schedules.

Secondly, Blue Coal's failure to file a timely proof of claim was the result of excusable neglect.

Lastly, Blue Coal's proof of claim should be allowed as an amendment to an informal "proof of claim" evidenced by "communications" from Blue Coal to Beltrami and Lucky Strike.

Bankruptcy Rule of Procedure 3003(c)(3) states as follows:

**Time for Filing.** The Court shall fix and for cause shown may extend the time within which proofs of claim or interests may be filed. Notwithstanding the expiration of such time, a proof of claim may be filed to the extent and under the conditions stated in Rule 3002(c)(2), (c)(3), and (c)(4).

Rule 3002(c)(2), (c)(3), and (c)(4) do not apply to Chapter 11 bankruptcies.

We then must look to Rule 9006(b)(2) which states as follows:

**(b) Enlargement.**

1. **Excusable neglect.**

In practice, and particularly with reference to the setting aside of a judgment taken against a party through his "excusable neglect," this means a failure to take the proper steps at the proper time, *not in consequence of the party's*

**(1)(2) In general.** Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Although the definition of "excusable neglect" has been the topic of much controversy among the Circuits, the Supreme Court of the United States has addressed that conflict in the case of *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

While it may be convenient to look to the Black's Law Dictionary definition of "excusable neglect" [1], that definition has been rejected by the controlling opinion in *Pioneer.*

Despite the fact that the *Pioneer* court recognized that a client ". . . is held accountable for the acts and omissions of their chosen counsel" *Id.* —— U.S. at ——, 113 S.Ct. at 1499, the Supreme Court focused its discussion on whether the neglect of counsel in filing the proof of claim in a timely fashion was excusable.

In order to further appreciate the *Pioneer Court's* use of the words "excusable neglect", this Court will turn to Webster's New Collegiate Dictionary (1979) for a definition of the word "excuse", which states as follows: "to make apology for, to try to remove blame from, to forgive entirely or overlook as of trivial import, regard as excusable, to grant exemption or release to, to serve as excuse for." **Webster's New Collegiate Dictionary (1979).**

■ In *Pioneer* it was counsel's inattentiveness that resulted in a late filed proof of claim. This Court finds that, similarly, it

*own carelessness,* inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident, or reliance on the care and vigilance of his counsel or on promises made by the adverse party. (Emphasis Ours) **Black's Law Dictionary,** 6th Ed.1990.

was counsel's inattentiveness in the case at bar that resulted in the claims not being filed in a timely fashion. While it is true that the Black's Law Dictionary definition of excusable neglect does not apply when client or counsel was inattentive, the *Pioneer Court* specifically rejected that definition in favor of a balancing test that would weigh the various factors such as enunciated in *In re Dix*, 95 B.R. 134 (9th Cir. BAP 1988).

The *Dix Court* spelled out five factors to consider in order to determine whether excusable neglect existed. Those factors were as follows:

(1) whether granting the delay will prejudice the debtor;

(2) the length of the delay and its impact on efficient court administration;

(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4) whether the creditor acted in good faith; and,

(5) whether clients should be penalized for their counsel's mistake or neglect.

*In re Dix*, 95 B.R. 134, 137.

■ The first factor depends on whether allowing the late filed claim will prejudice the debtor. In this case the Debtors are being administered by a Chapter 11 Trustee. That Trustee has not as yet filed a disclosure statement and plan despite the fact that these cases have been pending since 1991. In fact, no disclosure statement is pending except that of a creditor. There is no support in the record that the advancement of the creditor's plan will be prejudiced by the filing of a late filed claim.

In their brief, the Debtor argues that allowing a late filed claim will prejudice other creditors who have timely filed a claim. Although this Court can speculate that distribution to creditors would be reduced by the "allowance" of additional claims, we have no facts upon which to base an opinion that the mere filing of claims, timely or not, will result in any distribution to the claimant.

At trial, the Debtors argued that if this claim was allowed to be filed, the "floodgates" would open. No evidence was placed on the record to indicate that there were hordes of claimants ready to file claims should Blue Coal be allowed to file its claim late. We cannot conclude that granting Blue Coal's Motion to file a proof of claim will prejudice the Debtors in any fashion.

The second factor that we are asked to look at is the length of the delay and its impact on efficient court administration.

Just as in *Dix*, there was a two year delay between the bar date and the actual filing of the claim. Just as in *Dix*, ". . . there is no indication that in this case the delay has had a negative impact on efficient court administration". *In re Dix* at 138.

Similarly as in *Dix* no plan was confirmed prior to the request for the extension of time to file the proof of claim. We conclude that the length of the delay is not a factor in this case at this time with regard to the court administration of this case.

The third factor we must look to is whether the delay was beyond the reasonable control of the person whose duty it was to perform.

Unquestionably, counsel for Blue Coal had an obligation to timely file a proof of claim which it did not. If we were deciding this case prior to *Pioneer* our decision would be controlled by *In re Chrysler Motors Corporation v. Schneiderman*, 940 F.2d 911 (3rd Cir.1991). That decision spells out a significantly more conservative approach to the term "excusable neglect" and might suggest that counsel's failure to file a timely proof of claim may of itself require rejection of the Motion for Extension to file the claim so as to promote "finality" and reduce uncertainty. *Pioneer*, however, identifies this element as being only one factor in those considerations which the Court must weigh in deciding the current Motion.

The fourth factor that we are to consider is whether the creditor, Blue Coal, acted in good faith. We find no reason to believe that the Blue Coal Trustee has acted in anything other than good faith with regard to the claim that it has against these consolidated estates. The testimony is clear that at all times Beltrami and Lucky Strike were aware of the Blue Coal claim and were negotiating

in connection therewith. We thus must balance this factor in favor of allowing the claim.

The fifth and last factor to consider is whether the Blue Coal Trustee should be penalized for his counsel's mistake or neglect.

There has been no evidence suggesting that equity would require that the Blue Coal Trustee be penalized for his counsel's error.

We have a bankruptcy Trustee in the Blue Coal case who possesses a claim against the bankruptcy Trustee in the consolidated cases of Beltrami and Lucky Strike. Under the circumstances there is no reason why a claim should not rise or fall on its merits rather than on the timing of its filing.

■ This Court recognizes that the *Pioneer case* expands greatly the definition of the words "excusable neglect". This does not mean that there are no limits to the flexibility the Supreme Court will apply in reviewing the timeliness of various filings. Finality is still a worthwhile concept which the bankruptcy court is advised to advance. See *In re Szostek,* 886 F.2d 1405 (3rd Cir. 1989).

We agree with *In re Dix* which observed as follows:

The Ninth Circuit has noted that there are two standards of excusable neglect, one "strict" and one "liberal", and their application depends upon the procedural context in which the extension is sought. *In re Magouirk,* 693 F.2d 948, 950 (9th Cir.1982). In *Magouirk* the court noted that excusable neglect is generally liberally construed "in those instances where the order or judgment forecloses trial on the merits of a claim," such as a motion to set aside a default judgment under Fed. R.Civ.P. 60(b). *Id.* at 951. Where, however, the purpose of the extension sought is to review the propriety of a decision on the merits, such as in the context of a late filed notice of appeal, the term excusable neglect must be strictly interpreted. *Id.* at 950–951. (Footnote Omitted)

*In re Dix,* 95 B.R. 134 at 137.

■ In this case there has been no decision on the merits and therefore in accordance with *Pioneer Investment Services* we are compelled to interpret the term excusable neglect with great liberality. We therefore conclude that the Motion requesting an extension of time to file the proof of claim shall be granted for the reasons enunciated herein.