**In re ANCHOR GLASS CONTAINER CORPORATION, Debtor.**

**Vincent J. Naimoli, individually and on behalf of a class of all other persons similarly situated, Plaintiffs,**

v.

**Anchor Glass Container Corporation, Administrative Committee of the Anchor Glass Container Corporation Service Retirement Plan, Administrative Committee of the Anchor Glass Container Corporation Retirement Plan for Salaried Employees, John Ghaznavi, M. William Lightner, David T. Gutkowski [sic], Mark Karrenbauer, Jeffrey C. Gulbranson, Harold Greathouse, and Roger Erb., Defendants.**

**Bankruptcy No. 8:02–bk–07233–ALP.**
**Adversary No. 03–830.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 12, 2005.

Robert A. Soriano, Tampa, FL, for Debtor.

## ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT ANCHOR GLASS CONTAINER CORPORATION'S MOTION FOR SUMMARY JUDGMENT AND ORDER ON MOTION FOR LEAVE TO FILE LATE PROOF OF CLAIM (Doc. Nos. 123, 125, and 1638)

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTERS under consideration in this confirmed Chapter 11 case of Anchor Glass Container Corporation (the Debtor) are two Motions for Summary Judgment, one filed by Vincent Naimoli (Naimoli) and the other by Anchor Glass in the above-captioned adversary proceeding. The matter before this Court was initially a Motion for Leave to File Late Proof of Claim (Doc. No. 1638) filed by Naimoli in

the general case on July 16, 2004. On March 4, 2005, Naimoli filed the Motion for Summary Judgment and Incorporated Memorandum of Law. (Doc. No. 123) in the above adversary proceeding. On the same date, the Debtor filed its Motion for Summary Judgment and Memorandum in Support of its Objection to Vincent J. Naimoli's Proof of Claim. (Doc. No. 125) also in the adversary proceeding. Inasmuch as the ultimate issue in the adversary proceeding is identical with the issue involved in this contested matter, that is, Naimoli's and other's right to file a late proof of claim, this Court consolidated the contested matter with the above-captioned adversary proceeding.

Both parties agree that there are no genuine issues of material fact. This is far as the agreement goes and, of course, both sides contend that they are entitled to a resolution in their respective favor of the sole issue, which is Naimoli's right to file a late proof of claim. The relevant facts as appear from the record can be summarized as follows.

In order to put the present controversy in proper focus it should be helpful to briefly recap the events preceding the present Chapter 11 case. The Debtor's predecessor, Anchor Glass Container Corporation, filed its Chapter 11 Petition in 1996 in the Bankruptcy Court for the District of Delaware. (Case No. 96–01434). Anchor Glass Container Corporation ultimately obtained confirmation of its Amended Plan in the Bankruptcy Court in Delaware and with an entry of a Final Decree the Chapter 11 case was closed in September 2001. The Plan of Reorganization in the above-mentioned Chapter 11 case was a liquidation case and all assets of the prior Debtor were acquired by the newly formed corporation, which is the Debtor in this current Chapter 11 case.

Between 1983 and 1989 Naimoli was the Chief Executive Officer of the Debtor. During this period the Debtor maintained a retirement benefit plan for salaried employees (the Salaried Plan) and two defined benefit plans for the hourly employees of the Debtor (the Hourly Plans). Naimoli was a participant in the Salaried Plan. When it was discovered that the Salaried Plan was over funded and the Hourly Plans were under funded, on December 31, 1998, the Debtor merged the two plans and the Anchor Service Plan was the surviving Plan. Under the Salaried Plan it was estimated that Naimoli would have been entitled to a monthly payment in the amount of $6,487.78 upon the reaching sixty-five (65) years of age. It is without serious dispute that the Debtor realized at some point that there was a real possibility the merged Plans may be taken over by the Pension Benefit Guarantee Corporation (the PBGC).

On April 15, 2002, the Debtor filed its second Chapter 11 case in this Court. On April 17, 2002, this Court entered its Order and fixed the Bar Date of July 8, 2002, for filing proof of claims. It is without dispute that Naimoli was neither notified of the Chapter 11 filing by the Debtor, nor the Bar Date fixed by the Court. It appears that Naimoli had some discussion with Robert Soriano (Soriano), counsel of record of the Debtor early in the case. It is the contention of Naimoli, who is currently the General Manager of the Devil Rays Baseball Team that he spoke with Soriano about season tickets for the home games in St. Petersburg of the Devil Rays. Naimoli and Soriano both agree that there had been some unspecific and vague references to the pending Chapter 11 case of the Debtor.

Be that as it may, there is no hard evidence in this record which would warrant the finding that Naimoli learned

about the Debtor's pending Chapter 11 case or the entry of the Order fixing the Bar Date for filing proof of claims or even that he might possibly have a claim against the Debtor prior to the expiration of the Bar Date. On June 13, 2002, the Debtor filed its Amended Plan of Reorganization. (Doc. No. 136). On June 14, 2002, the Court approved the Disclosure Statement and set August 1, 2002, as the deadline for objecting to the confirmation of the Plan.

There is no evidence in this record that Naimoli received the notice of the entry of the Order Approving the Disclosure Statement. Furthermore, Naimoli was not notified of the Bar Date to object to the confirmation of the Debtor's Amended Plan of Reorganization. Prior to the confirmation of the Amended Plan on July 31, 2002, the Anchor Service Plan, which was the surviving plan under the merger, was terminated and taken over by the PBGC.

It appears that sometime in August 2003 Naimoli received a letter from his attorney informing him that because the Plan was under funded, he would not be receiving the amount of $6,487.78 per month, but he may be entitled to receive the sum of $3,514.40 per month under the Plan. It was not until December 2003, when Naimoli realized that he had a claim based on his participation in the Salaried Plan which, as noted earlier, was merged with the Hourly Plan.

On December 31, 2003, or seventeen months after the expiration of the Bar Date, Naimoli commenced this adversary proceeding by filing his Complaint against the Debtor and others. Naimoli asserted for the first time that he has a claim against the Debtor and, based on his claim, the Debtor breached its fiduciary duty by merging the two Plans and, as a result, Naimoli suffered damages. It was not until July, 16, 2004, that Naimoli filed his Motion for Leave to File Late Proof of Claim in the general case (Doc. No. 1638) which is the matter under consideration. The Motion included for the first time a formal proof of claim.

■ Based on the foregoing undisputed facts Naimoli contends that the Debtor knew or should have known that Naimoli is a creditor. Therefore, he was entitled to all notices, including the notice of the entry of the Bar Date as a matter of law. *In re The Charter Co.*, 113 B.R. 725, 727 (M.D.Fla.1990). Naimoli further contends, "[i]t is reasonable to dispense with actual notice to these unknown creditors provided that the debtor makes reasonably diligent efforts to uncover their identities and claims." *In re Charter Co.*, 125 B.R. 650, 654 (M.D.Fla.1991) (citing *Pope*, 108 S.Ct. at 1347 (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983))). The Eleventh Circuit has recognized that publication notice is legally adequate notice to unknown creditors. See *Matter of GAC Corp.*, 681 F.2d 1295, 1300 (11th Cir.1982).

■ A known creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Ser., Inc. v. Pope*, 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). A creditor's identity is "reasonably ascertainable" if the creditor can be identified though "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). "A known claim arises from facts that would alert the reasonable debtor to the possibility that a claim might reasonably be filed against it." *In re Brunswick Hosp. Center, Inc.*, Case Nos. 892–80487–20, 894–8283–346, 1997 WL 836684, *4 (Bankr.E.D.N.Y.1997) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 151 B.R. 674, 680 (Bankr. S.D.N.Y.1993)). If the debtor knows of a creditor's claim and the debtor fails to give

actual notice of the claims bar date, Section 1141 of the Bankruptcy Code does not discharge the debt of the creditor. *In re Gencor Indus., Inc.,* 298 B.R. 902, 914–915 (Bankr.M.D.Fla.2003) (citing *In re Spring Valley Farms, Inc.,* 863 F.2d 832, 835 (11th Cir.1989)). Naimoli contends in the alternative that even if he was not a known creditor who did not receive an actual notice of the Bar Date and the notice by publication of the Bar Date was sufficient, he should be permitted to file a proof of claim now under the doctrine of "excusable neglect" announced by the Supreme Court in the case of *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership,* 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

In opposition to Naimoli's Motion, and in support of its own Motion, the Debtor contends first, that Naimoli does not and cannot have a claim against the Debtor for the simple reason that when the Plan was terminated and taken over by the PBGC all claims against the Debtor by any Plan participants were transferred to PBGC and no claim can be asserted against the Debtor. In addition, the Debtor contends that Naimoli was not a "known creditor," that it could not have ascertained that Naimoli was a known creditor, that the Bar Date was published, and the publicity in the local media was more than sufficient notice. Therefore Naimoli's right to file a late claim is not supported by the doctrine of "excusable neglect."

Considering the respective contentions of the parties in reverse order, it should be noted at the outset, that the Debtor's contention that Naimoli has no allowable claim against the Debtor is based on the misconception of the Debtor that the claim is based on his entitlement to receive the amount of retirement under the Plan which he would have received, but for the merger. It is clear from the Complaint that the claim asserted in the adversary proceeding and also in the Motion for Leave to File Late Proof of Claim is based on the alleged breach of fiduciary duty of the Debtor, and not on the rights of Naimoli based on his participation in the Defined Benefit Plan now administered by the PBGC.

This Court is satisfied that Naimoli was not a "known creditor" of the Debtor on the date of the commencement of the case; he himself was not considered to be a creditor prior to the expiration of the Bar Date. Thus, this Court is satisfied that the rule which requires an actual notice to a known creditor does not apply to Naimoli.

■ This leads to the ultimate question, which is, should Naimoli be permitted to file the claim, which is clearly late, having been asserted for the first time albeit informally when Naimoli commenced the adversary proceeding, and later on formally, when he filed his Motion for Leave to File Late Proof of Claim.

The right to file a late claim has been extensively litigated, particularly in Chapter 11 cases. The courts considering this issue permitted the filing if they were satisfied that the late filing was due to "excusable neglect." The disagreements between the courts were due to the different interpretations of the term "excusable neglect" by the courts. In interpreting Rule 9006(b)(1) of the Bankruptcy Code, which governs enlargement, some courts have concluded that a party seeking leave to file a late claim has the burden to establish that the failure to file a claim timely was caused by circumstances beyond the movant's reasonable control. The interpretation of the term "excusable neglect" under Rule 9006(b)(1) has been adopted by the Fourth, Seventh, Eighth and Eleventh Circuits. *See Pioneer,* 507 U.S. at 387, 113 S.Ct. 1489.

In the case of *In re Dix,* 95 B.R. 134 (9th Cir. BAP 1988), the Court articulated five factors to be considered in order to determine whether a creditor has satisfied Bankruptcy Rule 9006(b)'s requirement of "excusable neglect:"

(1) whether granting the delay will prejudice the debtor;

(2) the length of the delay and its impact on efficient court administration;

(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4) whether the creditor acted in good faith; and

(5) whether clients should be penalized for their counsel's mistake or neglect.

*In re Dix,* 95 B.R. at 138. Some courts have applied a more flexible approach. *See In re Centric Corp.,* 901 F.2d 1514, 1518 (10th Cir.1990), cert. denied. Because of the conflict between the Circuits, the Supreme Court granted certiorari for the Court of Appeals for the Sixth Circuit, in the case of *In re Pioneer Investment Services Company,* 943 F.2d 673 (6th Cir. 1991).

In *Pioneer,* the Supreme Court rejected the inflexible interpretation of the term "excusable neglect" espoused by the Fourth, Seventh, Eighths and Eleventh Circuits and held that the court should accept a late filing where the failure to act timely was the result of "inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." See *Pioneer,* 507 U.S. at 380, 113 S.Ct. 1489.

In the present instance, the Debtor's Plan of Reorganization has been confirmed. In fact, it has been substantially consummated, but for the two pending matters; the one before this Court and the other before the District Court of Oklahoma, which involves a personal injury claim based on sexual harassment. The present matter under consideration by this Court is the two Motions for Summary Judgment in the adversary proceeding filed by Naimoli with regard to his Motion for Leave to File Late Proof of Claim.

Allowing Naimoli to file a late claim should not be construed to indicate that he has, in fact, an allowable claim, but merely he has a right to file a late claim. Allowing the late filing might have a negative economic impact on the case, which is questionable but not very likely, unlike the sexual harassment case.

Be that as it may, it is clear that this Chapter 11 case cannot be closed due to the two pending above-mentioned issues. This Court is satisfied that while Naimoli might have possibly filed his claim earlier, and considering the totality of the circumstances, his tardiness is excusable, his Motion to file a late claim is well taken and should be granted. The relief sought in the adversary proceeding shall also be granted to the limited extent that Naimoli has a right to pursue his claim, and not whether or not he has an allowable claim.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Vincent J. Naimoli's Motion for Leave to File Late Proof of Claim (Doc. No. 1638) and Vincent J. Naimoli's Motion for Summary Judgment (Doc. No. 123) be, and the same are hereby, granted and the Proof of Claim attached to the Motion is hereby accepted as filed with the proviso, however, that the Debtor may interpose whatever objection it may have, if any, to the allowance of the claim which it deems to be appropriate. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion for Summary Judgment (Doc. No. 125) be, and the same is hereby, denied, without prejudice. It is further

ORDERED, ADJUDGED AND DE-CREED that a pre-trial conference shall be held on _____, 2005, beginning at _____.m. at Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Ave., Tampa, Florida, for the purpose of scheduling the unresolved issues for trial, if there are any.