**In re FV STEEL AND WIRE COMPANY,[1] Debtor.**

**No. 04–22421–SVK.**

United States Bankruptcy Court, E.D. Wisconsin.

Sept. 27, 2005.

---

1. This case and its companion cases are being jointly administered. The other debtors and their original case numbers are:

*Keystone Consolidated Industries, Inc.* 04–22422

DeSoto Environmental Management, Inc. 04–22423
J.L. Prescott Company 04–22424
Sherman Wire Company 04–22425
Sherman Wire of Caldwell, Inc. 04–22426

Bruce G. Arnold, Daryl L. Diesing, Patrick B. Howell, Milwaukee, WI, David L. Eaton, Tasneem K. Goodman, Ryan S. Nadick, Kirkland & Ellis LLP, Chicago, IL, for Debtor.

## MEMORANDUM DECISION

SUSAN V. KELLEY, Bankruptcy Judge.

The CRI Steering Committee and The Glidden Company d/b/a ICI Paints (the "Claimants") timely filed Proofs of Claim 2409 and 2410 against Sherman Wire Company f/k/a DeSoto, Inc. (the "Debtor"). The Claims are contingent claims for costs associated with the clean-up of a variety of environmental hazards at the Chemical Recycling, Inc. site (the "Site") located in Wylie, Texas. The Debtor objected to the Claims, and the parties have filed Cross–Motions for Summary Judgment.

The Environmental Protection Agency ("EPA") named the Debtor and the Claimants Potentially Responsible Parties ("PRPs") with respect to the Site in a letter dated April 7, 1989. A number of PRPs, including the Claimants and the Debtor, entered into a Participation Agreement dated May 26, 1989 (the "Agreement") to work together to comply with the EPA's requests and better manage the clean-up. The Agreement provides for the parties to share the costs of investigation and expenses of remediation at the Site. The CRI Steering Committee was created to oversee the joint effort and periodically assess to each party an appropriate portion of the costs, and, prior to the Debtor's bankruptcy petition, various amounts had been allocated to and paid by the Debtor under the Agreement. It is not disputed that as of the petition date, the Debtor was current on its obligations

for the shared costs under the Agreement; in fact, the Debtor believes it had overpaid by some $50,000.

Importantly, the Agreement provides that the participants can withdraw from the Agreement simply by providing written notice to the CRI Steering Committee. A party who withdraws from the Agreement is liable only for its share of allocated costs assessed thirty days or more prior to the date of withdrawal, and for certain obligations that survive withdrawal. The Debtor withdrew from the Agreement on February 18, 2005, and on February 28, 2005, the EPA issued an action memorandum requiring additional work to be done at the Site. The EPA did not file a proof of claim in the Debtor's bankruptcy case related to the Site, although the agency filed claims related to other environmental sites.

The Debtor objected to the Claims based on *Cooper Indus., Inc. v. Aviall Servs., Inc.* 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004), limiting the rights of one private party to sue another under § 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 *et seq.* (2000). If the Claims passed muster under *Aviall,* the Debtor argued that they must be disallowed under § 502(e)(1)(B) of the Bankruptcy Code, barring contingent contribution claims. 11 U.S.C. § 502(e)(1)(B). The Claimants responded that § 502(e)(1)(B) does not apply since that section is meant to prevent double dipping by a primary and secondary creditor, and, in this case, the EPA did not file a claim for cleanup of the Site. The Claimants also maintain that their Claims are based on the Agreement, rather than CERCLA, and they distinguish *Aviall* based on the entry of an administrative order in this case.

## SUMMARY JUDGMENT STANDARD

Bankruptcy Rule 7056(b), applicable here pursuant to Bankruptcy Rule 9014, provides: "A party against whom a claim ... is asserted ... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Bankr.P. 7056, incorporating by reference Fed.R.Civ.P. 56. Summary judgment should be granted if the pleadings presented by the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* Thus, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Turner v. J.V.D.B. & Assocs., Inc.,* 330 F.3d 991, 995 (7th Cir.2003).

## THE PARTICIPATION AGREEMENT

The Claimants assert that the Claims are not contribution or reimbursement claims that are potentially barred by *Aviall* or § 502(e)(1)(B) of the Bankruptcy Code, but rather the Claims are grounded on the Agreement. The Agreement, by its terms, requires the Claimants, the Debtor and other PRPs to contribute to the cleanup of the Site at the request of the EPA and specifically creates direct contractual obligations from the Debtor to the Claimants. However, the Agreement also unambiguously provides that any party can withdraw from the Agreement, and it is undisputed that the Debtor withdrew at a time when no obligations were owed by the Debtor to the Claimants.

"In interpreting a written contract, the court should attempt to determine the intent of the parties at the time the contract was made as discovered by the language used to express their rights and duties." *J.S. Sweet Co. v. Sika Chem. Corp.,* 400 F.3d 1028, 1035 (7th Cir.2005).

Moreover, courts should "give contract terms their 'ordinary and popular' sense and avoid resort to extrinsic evidence when faced with unambiguous language." *Int'l Union of United Auto., Aerospace & Agric. Implement Workers v. Rockford Powertrain, Inc.,* 350 F.3d 698, 702–703 (7th Cir.2003).

■ The contractual language in this case is crystal clear and simple. In Section 4.4, Withdrawal of a Participant, the Agreement states:

> In the event any Participant regards its continued participation in this Agreement to be contrary to its interest or against the advice of Participant's counsel, the Participant may withdraw from all participation in this Agreement upon written notice to the CRI Steering Committee Chairman. Any Participant that withdraws shall remain liable under this Agreement for the full amount of its Initial Contribution and liable for any and all Additional Contributions for which the withdrawing Participant has been assessed thirty (30) days or more prior to the date of the notice of withdrawal and for the performance of all obligations which survive this Agreement.

The words of the Agreement are unambiguous: withdrawal from the Agreement is within the sole discretion of each participant, and a withdrawing participant will only be liable for unpaid portions of the initial contribution and any unpaid assessments made 30 days or more before the withdrawal date.[2] The Claimants do not contend that the Debtor owes any unpaid assessments from the relevant time period.

However, the Claimants cite Bankruptcy Code § 502(b) which requires the court to "determine the amount of [a] claim in law-

ful currency of the United States as of the date of the filing of the petition," and argue that since the Debtor had not withdrawn from the Agreement as of the petition date, the withdrawal has no effect on the amount of the Claims. The Claimants do not cite any case to support this argument, nor did the court's research unearth any precedent holding that a contract provision allowing a party's unilateral withdrawal from the contract should not be honored.

Even assuming that the Claims should be estimated as of the date of the petition (before the Debtor withdrew), the estimation would necessarily entail the Debtor's absolute right to withdraw from the Agreement. Since the Debtor owed no money at the time of the petition, and was entitled to withdraw from the Agreement by giving notice to the CRI Committee Chair, the amount of the Claims would properly be estimated at zero.

■ The Claimants also assert that they should be allowed to amend their Claims to assert executory contract rejection damages due to the Debtor's withdrawal from the Agreement. Again, the Claimants offer nothing in the way of caselaw to suggest that this form of joint defense agreement is an executory contract capable of assumption or rejection under Bankruptcy Code § 365. An executory contract is one in which "the obligation of both the bankrupt and the other party are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance by the other." *In re Resource Tech. Corp.,* 254 B.R. 215, 223 (Bankr. N.D.Ill.2000) (quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L.Rev. 439, 460 (1973)); *accord*

---

**2.** There is no assertion by the Claimants that the Debtor has breached any obligations, such as confidentiality, which survive the Agreement.

*Mitchell v. Streets (In re Streets & Beard Farm P'ship)*, 882 F.2d 233, 235 (7th Cir. 1989); *In re Crippin*, 877 F.2d 594, 596 (7th Cir.1989). As of the date of the petition, it is undisputed that the Debtor was current on its obligations to the Claimants under the Agreement, and the Agreement provides the ability for the Debtor to unilaterally withdraw from the Agreement. If the Agreement is an executory contract (which seems doubtful), it is comparable to a lease that terminates by its own terms during a bankruptcy case. Such a lease ceases to be property of the bankruptcy estate, and absent unpaid obligations from the debtor to the landlord, the landlord would have no claim for rejection damages for the termination of the lease. 11 U.S.C. § 541(b)(2). The Debtor did not reject the contract or breach the contract; the Debtor withdrew from the Agreement pursuant to its terms. Therefore, the Claimants are not entitled to recast their Claim in terms of rejection damages.

The Debtor's post-petition withdrawal from the Agreement should not leave the Claimants without a remedy, and they should be allowed to amend their Claims in light of the changed circumstances created by the withdrawal. However, their Claims need to pass muster under CERCLA and the Bankruptcy Code.

## CERCLA

■■■ Unable to claim damages under the Participation Agreement, the Claimants may find relief in CERCLA § 113(f)(1), which provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under § 9607(a) of this title, during or following any civil action under § 9606 of this title or under § 9607(a) of this title." To succeed under this section, the Claimants must address the obstacle created by *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 125 S.Ct. 577, 160 L.Ed.2d 548 (2004). *Aviall* involved a contribution claim in which a prior owner of a contaminated site was sued by a subsequent owner under a hybrid of CERCLA §§ 107 and 113.[3] 125 S.Ct. at 582. In *Aviall*, invoking the plain language of § 113(f)(1), the Supreme Court held: "[C]ontribution may only be sought subject to the specified conditions, namely, 'during or following' a specified civil action." *Id.* Because no specified civil action had been commenced under §§ 106 or 107(a), the Court disallowed the subsequent owner's § 113(f)(1) claim. *Id.* at 584. Similarly in this case, no specified civil action has been filed relating to the Site. Accordingly, as in *Aviall*, the Claimants cannot base their Claims on CERCLA § 113(f).[4]

■■■ The *Aviall* Court did not, however, decide whether CERCLA § 107(a) provides an avenue to allow one PRP to recover from another PRP. *Id.* at 586. ("In addition to leaving open whether Aviall may seek cost recovery under § 107 ..., we decline to decide whether Aviall has an implied right to contribution under § 107."). As the Claimants have noted,

3. The original complaint contained claims under both §§ 113(f)(1) and 107(a). However, the plaintiff amended its complaint to state a claim under § 113(f)(1). CERCLA Section 107(a) lists four classes of PRPs that "shall be liable" for, among other things, "all costs of removal or remedial action incurred by the United States Government" as well as "any other necessary costs of response incurred by any other person."

4. In response to the Claimants' argument that the administrative order issued by the EPA satisfies the requirement of a civil action, this court agrees with the holding in *Pharmacia Corp. v. Clayton Chem. Acquisition LLC*, 382 F.Supp.2d 1079 (S.D.Ill.2005): "[A]dministrative orders do not qualify as a civil action under Section 113(f)(1)." As a result, the administrative order issued in this case does not clear the hurdle imposed by *Aviall*.

some courts in *Aviall's* wake have upheld an implied right to contribution under § 107 even in the absence of a specific right granted to private parties as found in § 113(f)(1). *See, e.g., Metro. Water Reclamation Dist. v. Lake River Corp.,* 365 F.Supp.2d 913, 918 (N.D.Ill.2005); *Vine Street LLC v. Keeling,* 362 F.Supp.2d 754 (E.D.Tex.2005). The Claimants assert that, in light of the decisions allowing such suits under § 107(a), their Claims should similarly be allowed.

But the Seventh Circuit Court of Appeals has rejected an "implied contribution" remedy under § 107. In *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761, 764–765 (7th Cir.1994), the court explained:

> That Akzo's claim is one for contribution we have no doubt. Akzo argues that its suit is really a direct cost recovery action brought under section 107(a) rather than a suit for contribution under section 113(f)(1); and it is true that section 107(a) permits any "person"—not just the federal or state governments—to seek recovery of appropriate costs incurred in cleaning up a hazardous waste site. 42 U.S.C. § 9607(a), subpart (B). Yet, Akzo has experienced no injury of the kind that would typically give rise to a direct claim under section 107(a)—it is not, for example, a landowner forced to clean up hazardous materials that a third party spilled onto its property or that migrated there from adjacent lands. Instead, Akzo itself is a party liable in some measure for the contamination at the FisherCalo site, and the gist of Akzo's claim is that the costs it has incurred should be apportioned equitably amongst itself and the others responsible. That is a quintessential claim for contribution. *See Restatement (Second) of Torts* § 886A (1979); *see also Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 672 (5th Cir.1989); *In re Dant &*

> *Russell, Inc.,* 951 F.2d 246, 249 (9th Cir.1991). Section 113(f)(1) confirms as much by permitting a firm to seek contribution from "any other" party held liable under sections 106 or 107. **Whatever label Akzo may wish to use, its claim remains one by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make. Akzo's suit accordingly is governed by section 113(f).**

(Emphasis supplied).

The District Court for the Eastern District of Wisconsin recently interpreted *Akzo* to bar implied contribution claims under CERCLA § 107(a):

> Any claim under § 107(a) would also be futile. The City's initial complaint asserted an implied right of contribution claim under § 107(a), but the City dropped the § 107(a) claim from the subsequent iterations of its complaint because of the Seventh Circuit decisions in *Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc.,* 107 F.3d 1235 (7th Cir.1997), and *Akzo Coatings, Inc. v. Aigner Corp.,* 30 F.3d 761 (7th Cir.1994). The City was correct to drop the § 107(a) claim. *Akzo Coatings* held that an innocent landowner could bring a claim for direct response costs against a responsible party under § 107(a) but that a landowner who was a party liable in some measure for the contamination must seek contribution under § 113(f). *Akzo Coatings,* 30 F.3d at 764. The City does not contend that it is an innocent landowner. [*Aviall*] does not vacate the Seventh Circuit precedent that previously compelled the City to drop its § 107(a) claim. Therefore, the City's proposed amendment that would add a § 107(a) claim would be futile.

*City of Waukesha v. Viacom Int'l, Inc.,* 362 F.Supp.2d 1025, 1027–1028 (E.D.Wis. 2005).

 Under *Akzo,* a claimant must be either innocent of the environmental liability and thus entitled to file a direct claim under § 107(a), or proceed under § 113(f). Since *Aviall* prohibits contribution claims under § 113(f) in the absence of a "specified civil action," and no such action has been filed, the combination of *Aviall* and *Akzo* is fatal to the Claimants' arguments here.[5]

### THE STATE LAW CLAIM

The Claimants argue that their Claims can be allowed based on Texas Health and Safety Code § 361.344, part of the state's Solid Waste Disposal Act. The Claimants assert that "[f]ederal substantive law does not govern such claims because they are claims for cost recovery, not contribution, pursuant to applicable state law."

 The Texas Supreme Court recently summarized the elements necessary for a cost-recovery action under the Solid Waste Disposal Act: (1) the defendant is a person responsible for solid waste as defined in § 361.271; (2) the Texas Natural Resources Conservation Commission ("TNRCC") approved the plaintiff's removal or remedial action; (3) the action was necessary to address a release or threatened release of solid waste; (4) the costs of the action were reasonable and necessary; and (5) the plaintiff made reasonable attempts to notify the defendant of both the

release and the plaintiff's intent to take steps to eliminate the release. *R.R. Street & Co. v. Pilgrim Enters., Inc.,* 166 S.W.3d 232, 240 (Tex.2005). Even assuming that the first element is met here, there is no evidence in the record that the TNRCC approved any removal or remedial action at the Site. Therefore, the Claimants have failed to meet an essential element of a claim under the Texas Solid Waste Disposal Act, and their arguments for direct recovery under that statute must fail.

### FAILURE OF EPA TO FILE A CLAIM

The Claimants finally request that they should be allowed to amend the Claims to assert claims on behalf of the EPA, pursuant to § 501(b) of the Bankruptcy Code. Section 501(b) provides in pertinent part: "If a creditor does not timely file a proof of such creditor's claim, an entity that is liable to such creditor with the debtor ... may file a proof of such claim." Bankruptcy Rule 3005(a) permits an entity that is liable with the debtor to a creditor to file a claim on the creditor's behalf, within 30 days after the expiration of the applicable claims bar date. That bar date expired more than 30 days ago.

 In *Norpak Corp. v. Eagle–Picher Indus. (In re Eagle–Picher Indus.),* 131 F.3d 1185, 1188 (6th Cir.1997), the bar date for a claimant to file a claim on behalf of the EPA had expired over four years before the debtor objected to the claimant's contribution claim. The Sixth Circuit noted that the bar date can

---

**5.** As the Claimants cannot properly claim contribution or reimbursement from the Debtor under CERCLA (which provides the only basis for such a claim in these circumstances) there is no need to address the provisions of Bankruptcy Code § 502(e)(1)(B), barring contingent claims for contribution or reimbursement. "[A] bankruptcy court has full power to inquire into the validity of any claim asserted against the estate and to disal-

low it if it is ascertained to be without lawful existence." *In re Witte,* 841 F.2d 804, 808 (7th Cir.1988) (quoting *Pepper v. Litton,* 308 U.S. 295, 304–305, 60 S.Ct. 238, 84 L.Ed. 281 (1939)); *see also Lesser v. Gray,* 236 U.S. 70, 74, 35 S.Ct. 227, 59 L.Ed. 471 (1915) ("When an alleged debt or obligation is ascertained to be invalid—without lawful existence—the claim based thereon is necessarily disallowed").

be extended for excusable neglect and stated:

> In *Pioneer Investment Services v. Brunswick Associates Limited Partnership,* a case arising in this circuit, the Supreme Court held that the excusable neglect exception applies to late filings of proofs of claim in Chapter 11 proceedings. 507 U.S. 380, 381, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The inquiry into whether the neglect is excusable "is at bottom an equitable one, taking account of all the relevant circumstances surrounding the party's omission." *Id.* at 395[, 113 S.Ct. 1489]. Adopting the Ninth Circuit's approach in *Dix v. Johnson,* 95 B.R. 134 (B.A.P. 9th Cir. [BAP] 1988), the *Pioneer* Court listed several factors to be considered, including (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; (4) whether the delay was within the reasonable control of the late party; and (5) whether the late party acted in good faith. *Id.*

*Id.* at 1188. *Eagle–Picher* recognized the important policy that debtors not be allowed to hide behind the bankruptcy shield to avoid their responsibilities to clean up environmental messes. *Id.* at 1191. This court acknowledges that the circumstances here—in which the Debtor had not withdrawn from the Participation Agreement when the claims bar date passed—could suggest that excusable neglect exists either for the EPA or the Claimants on EPA's behalf to file a late claim. However, having focused their briefs and arguments on the effect of the Agreement and the *Aviall* decision, the parties have not addressed the elements of excusable neglect. Accordingly, the Claimants' request to amend the Claims to assert a claim on behalf of the EPA is denied, without prejudice to being raised in the format of a Motion to allow a late filed claim under Rule 3005(a).

## CONCLUSION

The Participation Agreement provides that the Debtor can withdraw from the Agreement in the Debtor's sole discretion. The Debtor exercised that right of withdrawal, at a time when it owed no money to the Claimants. The Participation Agreement is not an executory contract, and the Debtor's withdrawal from the Agreement is not akin to rejecting an executory contract. Without the benefit of the Agreement, the Claims cannot survive scrutiny. The Supreme Court's *Aviall* decision severely limits the right of a PRP to make a CERCLA § 113(f) contribution claim against another PRP, and the door left open by *Aviall's* suggestion that an implied contribution right may exist under CERCLA § 107(a) is closed in the Seventh Circuit. The Claimants have not demonstrated that they can meet the requirements for a claim under the Texas Solid Waste Disposal Act. Accordingly, the Debtor's Objection to the Claims should be granted, and the Claims must be disallowed. This decision does not foreclose either the EPA or the Claimants on behalf of EPA from filing a Motion to allow a late filed claim, under the excusable neglect standards of *Pioneer Investment Services.*

A separate order will be issued granting the Debtor's Motion for Summary Judgment.